OWENS *v.* DOUGLAS.

Opinion delivered December 20, 1915.

1. WILLS—APPEAL FROM ORDER OF PROBATE COURT—COST BOND.—Where the proponents of an alleged will appealed to the circuit court from an order of the probate court refusing to admit the will to probate, they are not required to give the cost bond as specified in Act 327, Acts 1909.

2. WILLS—TESTAMENTARY PROVISIONS—NON-TESTAMENTARY PROVISIONS. —An instrument containing testamentary provisions, showing the purpose of the signer to dispose of his property by will, is valid as a will where it is properly executed, notwithstanding it may contain clauses concerning matters that are not of a testamentary nature.

3. WILLS—TESTAMENTARY CHARACTER.—An instrument with various provisions, dispositive and otherwise, closely connected, without intervening blank spaces, and with no testamentary clauses following the signature, will be construed as a will.

4. WILLS—PROVISION FOR CARE OF TESTATOR DURING LIFE.—An instrument which undertook to name executors, to provide for the payment of the testator's debts, gave certain sums of money to his children, to be paid after his death, devised certain real estate to his executors, imposing on them the duty of paying his debts, funeral expenses, and the legacies to his children, which was properly executed and witnessed, will be construed as a will, and as such entitled to probate, although the instrument also imposes upon the executors the duties of taking care of the testator and his wife as long as they should live, and of taking care of one C. D.

Appeal from Benton Circuit Court; *J. S. Maples,* Judge, affirmed.

STATEMENT BY THE COURT.

Appellees applied to the probate court of Benton county to probate the following instrument as the last will and testament of A. R. Rodgers, deceased, towit:

"Know all men by these presents: That I, A. R. Rodgers, of Mundell in the county of Benton and State of Arkansas, being in ill health but of sound and disposing mind and memory, do make and publish this my last will and testament hereby revoking all former wills by me, at any time, heretofore made.

"I hereby constitute and appoint William Douglas and Cynthia Douglas his wife to be the sole executrix of my last will, directing my said executrixes to pay all my just debts and funeral expenses and the legacies hereinafter given out of my estate.

"After the payment of my said debts and funeral expenses I give to each of my children, Catherine Brisco, William Riley Rodgers, Granville P. Rodgers, Sarah Owens, Lucinda Harris (deceased), Rosa Barnes, five dollars each, to be paid to each of them as soon after my decease, but within one year, as conveniently may be done.

"And for the payment of the legacies aforesaid I give and devise to my said executrixes all of my real estate consisting of the following land: The southwest quarter of the southwest quarter section 17, and the east one-half of the southeast quarter of section 18 in township 20 north of range 27, west of the 5th principal meridian in Arkansas, containing 120 acres.

"Any of my said executrixes shall rent the above named land so long as we or either of us live giving me one-third of all crops raised on said land and is to keep said place in good repair. And if myself or wife become unable to take care of ourselves they are to take care of us so long as we live.

"And also said executrixes is to take care of and see after Charley Dill and see that he don't suffer for nothing.

"And if said executrixes becomes dissatisfied and leave me or either of us before our death this will is to be null and void, otherwise to remain in full force and effect at our death.

"In testimony whereof I hereto set my hand and publish and declare this to be my last will and testament

in the presence of the witnesses named below this 14th day of February, 1913.

(Signed)    A. R. Rodgers."

The will was witnessed in the usual manner by W. J. Ash and Ida Ash.

Appellants filed exceptions to the probate of the instrument and the probate court refused to probate the same on the 30th day of December, 1914.  From the order rejecting the probate appellees appealed to the circuit court.  On the 27th day of March, 1915, appellants filed a motion to dismiss the appeal for the reason that no cost bond has been filed.  The circuit court overruled the motion to dismiss and appellants duly saved their exceptions.  The circuit court held that the instrument should be admitted to probate, from which judgment this appeal has been duly prosecuted.

*Walter Mathews,* Cushing, Okla., for appellants.

1.    The circuit court acquired no jurisdiction because appellees filed no cost bond.  Acts 1909, p. 956; 99 Ark. 56; 116 Ark. 266; Kirby's Dig., § 1348.

2.    The instrument is not a will; there is no one to take under it at the death of the testator; it could not take effect at death; it was not signed at the end thereof; and hence was not subject to probate at the death of the testator.  40 Cyc. 1074, 1105-6; 35 Ark. 17; 33 *Id.* 759; 17 L. R. A. (N. S.) 353; 2 Am. Cases, 726; 146 Cal. 455.

Appellees *pro sese.*

1.    The appeal should be dismissed because no cost bond was filed.  Appellants are non-residents.  Kirby's Dig., § 960.

2.    Appellees had the right to appeal without giving an appeal bond.  Kirby's Dig., § 1348; Acts 1909, p. 956; 65 Ark. 419; 99 *Id.* 58; 105 *Id.* 305.

3.    The instrument was a will, properly signed, witnessed and attested as provided by law.  Kirby's Dig., § 8012; 90 Ark. 152; 98 *Id.* 553; 104 *Id.* 439; 40 Cyc. 1571, 1651; 118 S. W. 404; 94 N. Y. 535; 46 Am. Rep. 156; 147 N. Y. 699; 42 N. E. 724; 38 Barb. 364; 204 Pa. 479; 54 Atl. 313.

WOOD, J., (after stating the facts). Appellants contend. 1. That the circuit court acquired no jurisdiction because the appellees failed to file a cost bond.

Section 1348 of Kirby's Digest provides that "appeals may be taken to the circuit court from all final orders and judgments of the probate court at any time within twelve months after the rendition thereof by the party aggrieved filing an affidavit and prayer for appeal," etc. Act 327 of the Acts of 1909 amended section 1348. The latter act sets out section 1348 *supra,* and amends the same by adding, "And any heir, devisee, legatee or judgment creditor of an estate, who feels aggrieved, may at any time within six months after the rendition thereof, prosecute an appeal to the circuit court from any final order or judgment of the probate court by filing an affidavit and prayer for appeal with the clerk of the probate court, together with a bond to pay the costs of the appeal if the judgment of the probate court is affirmed, and upon the filing of such affidavit and bond for cost, to be approved by the clerk, the court shall make an order granting the appeal at the term at which said judgment or final order shall be rendered or at any term within six months thereafter."

(1) This act, amending section 1348, did not take away the rights of the parties who were aggrieved by the judgment of the probate court to appeal without giving bond for costs. Such bond was not required of the parties aggrieved who were parties to the suit, and the amended act did not affect their rights under the old law. It was only intended to extend the right to appeal to certain classes—"heirs, devisees, legatees and judgment-creditors"—who were not parties to the proceedings in the probate court at the time the judgment was rendered, but whose interests might, nevertheless, be affected in some manner by such judgment, but who, in the absence of the above amended statute, would have had no right to appeal. See *Hall* v. *Rutherford,* 89 Ark. 554.

In *Stricklin* v. *Galloway,* 99 Ark. 56-60, speaking of this statute, we said: "Now if the amended statute means anything at all it means that 'any heir, devisee,

legatee or judgment creditor' of an estate can appeal from the judgment of the probate court within six months after its rendition whether previously made a party to the proceedings or not.''

The appellees were proponents of the alleged will, and therefore were not required to give bond specified in the act approved May 31, 1909, *supra*.

2. The appellants next contend that the instrument set forth was not signed at the end thereof, because it was not signed at the termination of the testamentary or dispositive clauses, also that the provision requiring that the executors should take care of the testator and his wife so long as they lived rendered the instrument invalid as a will and therefore not subject to probate. But we do not so construe the instrument. It was executed and attested in the manner required by section 8012 of Kirby's Digest for executing and attesting nonholograph wills. There were no testamentary clauses following the signature of the testator, and it is certain that it was his intention, by his signature, to authenticate and make his own the testamentary clauses that preceded it.

(2) An instrument containing testamentary provisions, showing the purpose of the signer to dispose of his property by will, is valid as a will where it is properly executed, notwithstanding it may contain clauses concerning matters that are not of a testamentary nature. See 40 Cyc. p. 1007, and authorities under note 15.

(3) The purpose of our statute in requiring wills to be signed at the end thereof is to provide against fraud, and this statutory requirement must not be frittered away by loose interpretation. 40 Cyc. p. 1105. But certainly an instrument with the various provisions, dispositive and otherwise, closely connected, as these were, without any intervening blank spaces, and with no testamentary clauses following the signature—(the whole body of the instrument in consecutive order showing but one instrument, and signed at the end thereof)—fully meets the requirements of the statute. *In re Gilman*, 38 Barb. 364; *Morrow's Estate* No. 1, 204 Pa. 479.

(4)   The provision requiring the executor to rent the land as long as the testator and his wife lived, and to take care of them as long as they lived, and to take care of Charley Dill, and the provision that if the executors left either the testator or his wife before their death, the will should become null and void, "otherwise to remain in full force and effect at our death," do not as we construe it, show that the will was not to take effect at the death of the testator and that it could not take effect until the death of the testator's wife.   There is nothing in these provisions to indicate that the testator intended that the will should not take effect at his death but that it should take effect at the death of his wife.

The instrument names executors, provides for the payment of just debts and funeral expenses, gives to each of the children named five dollars to be paid after the testator's death, and devises to his executors the real estate described, and imposes upon them the duty of paying the debts, funeral expenses and legacies to his children and of taking care of the testator and his wife as long as they should live, and of taking care of Charley Dill.   The instrument constituted the will of Rodgers, and as such was entitled to probate.

It is unnecessary to decide, and we do not decide, whether the instrument vested the fee simple title to the land in appellees.   And as this is only an application to probate the will, it is not proper for us to decide whether the instrument was a contract to make a will between the testator and the appellees, and susceptible to enforcement as such.   No such question was presented to the trial court.   The judgment of the circuit court directing the probate court to admit the instrument to probate is correct, and is, therefore, affirmed.