MUSGROVE v. HOLT.

Opinion delivered May 15, 1922.

1. WILLS—VALIDITY.—A will, in the handwriting of the testatrix, though partly written with pencil and partly with ink, and though long spaces intervened between paragraphs or sentences of the will, was not thereby rendered invalid; the names of the devisees and legatees being specifically mentioned and the bequests to them being set forth with sufficient clearness of description to identify the property which they were to receive.

2. WILLS—PLACE OF SIGNATURE.—Under Crawford & Moses' Dig., § 10494, providing that a will must be subscribed by the testatrix at the end thereof, where the body of a will was in the testatrix's handwriting and her signature appeared at the end thereof, a clause added by a third person after her signature, made without testator's knowledge, may be disregarded.

3.  WILLS—ADDITION AND ERASURE.—Where an executor, without the knowledge of the testatrix, for the purpose of clarifying a will, erased a clause therein providing that the executors were to be paid $1000 for their services, and added, after the signature of the testatrix: "They are to receive $1000 in full for their services," the will was not invalidated thereby.

4.  WILLS—HOLOGRAPH WILLS.—A will wholly written by the testatrix is valid, though it was written partly with ink and partly with pencil.

Appeal from Arkansas Circuit Court, Southern District; *George W. Clark,* Judge; affirmed.

*Gustave Jones, C. R. Leslie* and *John W. Newman,* for appellants.

Every last will and testament must be subscribed by the testator at the end thereof, or by some person for him, at his request. C. & M. Digest, § 10494, first subdiv. See also 5th subdivision of same as to holographic wills.

The purpose of our statute in requiring wills to be signed at the end thereof is to provide against fraud, and this statutory requirement must not be frittered away by interpretation. 121 Ark. 448. The fraud to be prevented is the forging of inserted or additional provisions, the cutting off or erasure of provisions at the end, or the probate of an incomplete or deliberation, rather than a completed instrument.

The instrument, to be entitled to probate, must be the very paper intended by the testator to be his will. 28 R. C. L. 59; 1 Alexander on Wills, 569, § 420; 91 N. Y. 516, 520.

A holographic will must show on its face that it is final and complete and intended to be operative, just as it is when the testator subscribes his name. 126 N. Y. Suppl. 933; 146 Cal. 455, 106 Am. St. Rep. 53; 118 Penn. St. 37; Underwood on Wills, 252, § 186; 1 Alexander on Wills, 1917 Ed., 573; *Id.* 761, § 558; 40 Mont. 190, 26 L. R. A. (N. S.) 1145.

It is conceded that a will may be informal, not couched in any particular form of language, etc., and still

be valid, but it must, nevertheless, in order to be valid, meet the requirements of the statutes and the laws in regard to wills, and the statute requiring the will to be signed at the end must be strictly complied with. 224 S. W. (Ark.) 729.

In this instance, the presumption of law exists that the pencil writing was written after the writing and signature in ink. 1 Alexander on Wills 761, § 558; 126 N. Y. Suppl. 933. See also 6 Penn. 413.

*John W. Moncrief,* for executors.

This court is committed to the doctrine that no particular form is essential to the validity of a will. On the other hand, it has held that a will is sufficient, however irregular in form, or in expression, just so it discloses the intention of the testator touching the final disposition of his property. 80 Ark. 204; 144 Ark. 429; 122 Ark. 411; 116 *Id.* 565.

The blank spaces appearing in the body of the instrument do not affect its validity. 106 Am. St. Rep. 53, 59; 89 *Id.* 135, 139; 131 *Id.* 719, 80 Ohio St. 691; 10 A. L. R. 422.

The act of Holt in drawing the pencil mark through the words "consideration $1,000" and in writing the words following the signature of the testatrix cannot have the effect of revoking the will or of defeating its provisions.

Had the testatrix herself made these changes, that would not have invalidated the will. 36 L. R. A. (N. S.) 66, 79 Atl. 532; 98 Am. St. Rep. 808; 85 S. W. 179-181; 90 Am. St. Rep. 121; 57 *Id.* 135.

A will is not invalidated because blank spaces are left in the body of it, if the instrument itself be coherent and consistent. Schouler on Wills, 5th Ed., § 435, pp. 545-546. And an alteration appearing therein raises no presumption against it, but the question of the time of the alteration is one for the jury. 127 Am. St. Rep. 499.

The fact that a will was written partly with a pen and partly in pencil writing raises no presumption of

alteration. It merely raises a question of fact for the jury as to whether the part or parts written in pencil were so written before execution. 19 Am. St. Rep. 637; 95 N. Y. 145, 153. See also 129 N. Y. Suppl. 5; 1 Annotated Cases, 606-609.

As to whether this instrument is a will, or a mere suggestion for a will, was a question of fact, and the finding that it is a will is supported by the evidence. 1 Alexander on Wills, 58, § 52; 116 Ark. 565.

As to holographic wills see 59 N. E. 910; 14 L. R. A. (N. S.) 968-972; 1 Annotated Cases, 371-373; 37 N. E. 125, 128; 85 S. W. 179.

*Botts & O'Daniel,* for legatees.

Wood, J. On the 26th of February, 1920, the probate court for the Southern District of Arkansas County, on the application of C. P. Chaney and Miss Myrtle Moon, admitted to probate a written instrument as the last will and testament of Mrs. P. D. Porter, deceased. Certain parts of the will are written in pencil, and other portions are written with ink. The will disposes of a large estate consisting of real and personal property. Several different parties are named as devisees and legatees in the will. The bulk of the estate was bequeathed to C. P. Chaney. The last clause of the will, as originally written in pencil, is as follows: "I appoint J. I. Porter and Earl Holt my executors of this, my last will and testament, without bond. Consideration $1,000 dollars. (Signed) P. D. Porter." Pencil marks were run through the words "Consideration $1,000 dollars" and after the signature was written the following: "They to receive $1,000 in full for their services."

William N. Musgrove, James L. Musgrove, Gilbert Musgrove and Lula Talbot objected to the probate of the will and were granted an appeal to the circuit court. In the circuit court they were named as parties contestants and filed their petition setting forth their grounds of contest, which are as follows: "(1). That the entire body of the will and the signature thereto are not writ-

ten in the proper handwriting of the testatrix. (2). That the said will is not subscribed to by the testatrix at the end thereof.''

At the trial Myrtle Moon, Vida Hamilton and Mrs. Vida Hamilton, as guardian, were made parties proponents as beneficiaries under the will. The issue as to whether the instrument presented for probate was the will of Mrs. P. D. Porter was by consent of parties tried by the court.

The testimony tended to prove substantially the following: Three witnesses made affidavits in the probate court that for several years they had been familiar with the handwriting of Mrs. Porter; that the entire body of the proposed will and the signature thereto were in the proper handwriting of Mrs. P. D. Porter; that at the time of the execution of the alleged will she was more than twenty-one years of age and of sound and disposing mind and memory. Several other witnesses testified to the same effect. One of them stated that he had known Mrs. Porter all of his life and had made a study of handwriting for eight or ten years. This witness stated that the entire body of the will and the signature were written in the handwriting of Mrs. Porter. The words following the signature to-wit, ''They to receive $1,000 in full for their services'' were in the handwriting of Earl Holt.

The testimony of the county and probate clerk was to the same effect, and likewise that of J. L. Porter and R. F. Holt. Indeed, the testimony is undisputed that the entire body of the will and the signature were in the handwriting of Mrs. Porter, and that the words following her signature quoted above were written by Earl Holt.

Witnesses Porter and Holt testified concerning the erasure of the words, ''Consideration $1,000 dollars'' and the words written by Holt following her signature, substantially as follows: The pencil marks were run through the words, ''consideration $1,000 dollars,'' after Mrs. Porter had signed and executed the will. This erasure was made and the words ''They to receive $1,000 in full

for their services" were written by Holt in lieu thereof, or to explain the words through which the pencil marks had been drawn. This erasure was made and these words written after Mrs. Porter had left. J. I. Porter, a nephew by marriage of Mrs. Porter, had discussed with Mrs. Porter the making of her will. She wrote the same when she was on a visit to Hot Springs, and on her way from Hot Springs she stopped over in Stuttgart and talked with Porter about it. He read the will and sent word for Holt to come. Holt, who was a lawyer and a confidential friend of Mrs. Porter, took the will away to look it over carefully to see if any changes were needed. The next day or so he brought the will back to Porter's office, and they read it over carefully, and Holt stated that he thought the three words, "Consideration $1,000 dollars," should be a little clearer so that there would be no question among the heirs about it. Then at Porter's request Holt drew those lines through the words and added the words after the signature above indicated. This was all done after Mrs. Porter had gone home, and she had absolutely nothing to do with it. The matter came about, as explained, because Porter was a close kinsman of Mrs. Porter. The will, in this form, was sent to Mrs. Porter, and was not seen any more until it was taken out of the desk drawer in her office after her death.

It was shown that Mrs. Porter had some property in California and a one hundred dollar Liberty bond not included in the will.

Upon the above facts, the court found that the instrument proposed and admitted to probate by the probate court was the last will and testament of Mrs. P. D. Porter, and that the same had been properly proved and admitted to probate, and entered a judgment so declaring and dismissing the petition of the contestants, and for costs, from which judgment is this appeal.

1. The appellants contend, first, that, inasmuch as parts of the will were written with pencil and part with ink, the presumption is that those parts written

in pencil were written after Mrs. Porter had executed the will. They further contend that the parts written in pencil when read alone do not make sense, and that there were long blank spaces between paragraphs in the will, which show that the instrument on its face was merely "deliberative memoranda." It is impractical to set out the will in this opinion as it appears in the record. We have examined the same, however, and cannot sustain learned counsel in their above contentions. The undisputed testimony, as we have stated, shows that the entire body of the instrument and the signature thereto, as originally written, were in the proper handwriting of Mrs. Porter, and that the parts appearing in ink and in pencil were all written by her and were in the instrument when the will was left with Holt to see if it was in proper form and whether or not he had any changes to suggest.

The will, when read as a whole, is not unintelligible. The names of the devisees and legatees are specifically mentioned and the several bequests to them are set forth with sufficient clearness of description to identify the property which the testatrix intended the beneficiaries should receive. The fact that long spaces intervened between paragraphs or sentences of the will can make no difference where the testator by the language written makes a disposition of his property and the instrument is signed at the end thereof.

As was said by Judge RIDDICK in *Arendt* v. *Arendt*, 80 Ark. 204, quoting from Jarman on Wills: "The law has not made requisite to the validity of a will that it should assume any particular form, or be couched in language technically appropriate to its testamentary character. It is sufficient that the instrument, however irregular in form or inartificial in expression, discloses the intention of the maker respecting the posthumous destination of his property; and, if this appear to be the nature of its contents, any contrary title or designation which he may have given to it will be disregarded." The above was said concerning a document that took the

form of a letter which the court held to be a valid holographic will. See also *Murphy* v. *Murphy,* 144 Ark. 429.

The fact that there were blank spaces, some of them more or less lengthy, between paragraphs of the will or between the last writing and the signature can make no difference when it is clearly shown, as it is here, that nothing was inserted in the body of the will after the signature of the testatrix had been attached thereto. In other words, the body of this will, even if written at different times, was all written and signed by Mrs. Porter as her last will and testament and left with her kinsman and attorney as the instrument by which she intended to make the testamentary disposition of her property. It is not alleged and proved that there were any fraudulent insertions or interlineations in the instrument under review after the same had been signed by Mrs. Porter. Indeed, there is no pretense that the entire instrument, except the words, added after her signature and the erasure of the words preceding, was not the handiwork of Mrs. Porter. There is no room for the conclusion that this instrument was only intended by Mrs. Porter as merely "deliberative memoranda" as contended by the appellant, and not as her completed will. The instrument itself, as well as the evidence *aliunde,* proved clearly that same was her will. Sec. 10494, Crawford & Moses' Digest, provides as follows:

"Every last will and testament of real or personal property, or both, shall be executed and attested in the following manner: First. It must be subscribed by the testator at the end of the will, or by some person for him, at his request. * * * * * * Fifth. When the entire body of the will and the signature thereto shall be written in the proper handwriting of the testator or testatrix, such will may be established by the unimpeachable evidence of at least three disinterested witnesses to the handwriting and signature of each testator or testatrix, notwithstanding there may be no attesting witnesses to such will * * * * * *."

In *Owens* v. *Douglas,* 121 Ark. 448, the court said: "The purpose of our statute in requiring wills to be signed at the end thereof is to provide against fraud, and this statutory requirement must not be frittered away by loose interpretation." When this will is scanned as a whole, there is no such intervening space between its provisions as to suggest that the will was not signed at the end of the testamentary dispositions and therefore at the end of the will. In the case of *Re Estate of Blake,* 136 Cal. 306, 68 Pa. 827, 89 Amer. St. Rep. 135-140, the will was written on a blank form, and after the end of the testamentary provisions there was a blank space with lines of more than half a page on which there was no writing or printing. On the following page under the heading, "Lastly," the provisions as to the appointment of the executrix is made; then follows the clause "In witness whereof," etc; and the name "Thomas M. Blake." The court said: "We think the will was signed at the end thereof within the meaning of the statute. There is no provision as to the disposition of property, or provision of any other kind, after the name of the testator. The name was signed at the end, but not immediately at the end of the testamentary provisions. It was not necessary for the signature to have been on the first or second line below the testamentary clauses." There is no testamentary disposition after the signature of Mrs. Porter. *Mader* v. *Apple,* 80 Ohio State 691, 89 N. E. 37, 131 Amer. St. Rep. 719; see also, *In re Moro,* 10 A. L. R. 422; *Estate of Seaman,* 146 Cal. 455; 80 Pa. 700, 106 Amer. St. Rep. 53, and authorities collated in case note to *Sears* v. *Sears,* 17 L. R. A. (N. S.) 353. The will under review was signed at the end thereof, was duly established, and meets every requirement of the above statute to constitute a valid holographic will.

2. The erasure made by Holt of the words, "Consideration $1,000 dollars" and the addition by him after the signature of the testatrix, were made after Mrs. Porter had signed the will, in her absence, and without

her knowledge. This erasure and this addition did not purport to affect any testamentary disposition. They were mere spoliations of the will by Holt, a stranger, and could have no effect whatever on the validity and probate of the will. Even if they had been made by Mrs. Porter herself, they would not have amounted to a revocation or cancellation of her will. They added nothing to it and took nothing from it. They were intended merely to clarify what appeared to Holt to be not clearly expressed; but, as they were made after Mrs. Porter had signed the will and without her knowledge, they did not affect the validity of the will. *Monrow* v. *Huddard,* 14 L. R. A. (N. S.) 259, 28 R. C. L. sec. 142, p. 183-186; *Hesterburg* v. *Clark,* 57 Amer. St. Rep. 135; *Re Kapen's Will,* 98 Amer. St. Rep. 808; *Howard* v. *Hunter,* 90 Amer. St. Rep. 121.

3. The statute does not require that a will shall be written in ink or pencil, or that it may not be written in both. Since the undisputed testimony shows that this entire will was written by Mrs. Porter herself, it was wholly immaterial whether pen and ink exclusively, or pencil, or both, were used. 28 R. C. L. sec. 62, p. 110. See, *In Re Estate of Tomlinson,* 19 Amer. St. Rep. 637; *Meyers* v. *Vanderbilt,* 24 Amer. St. Rep. 227; 40 Cyc. 1194; *LaRue* v. *Lee,* 14 L. R. A. (N. S.) 968. There is nothing either in the form of this will, the manner in which it was written (being partly with ink and partly with pencil) to indicate that the testatrix intended the same as mere deliberative memoranda. On the contrary, it occurs to us that the will itself and the evidence *aliunde* show that it was the intention of the testatrix to execute this instrument as her last will and testament. The decree of the trial court so holding, and directing that the judgment of the probate court admitting the will to probate be sustained, is in all things correct and is therefore affirmed.