WEEMS, ADMINISTRATOR *v.* SMITH.

4-9431                                    237 S. W. 2d 880

Opinion delivered March 19, 1951.

*Jack Williamson*, for appellant.

*Pat Robinson*, for appellee.

ROBINSON, J.   There are two questions involved in this appeal.   One is the validity of an alleged holographic will; the other is the jurisdiction of the Probate Court in regard to ownership of personal property.   Since our decision is in favor of the will, the other question passes out of the case.

Sidney Smith committed suicide by shooting himself while sitting in a chair on the front porch of the house in which he lived.   It was in the daytime.   Neighbors heard the shot, immediately went to the house, and found Smith sitting in a rocking chair mortally wounded.   By the side of the chair was his hat and inserted in the hatband was the following writing, which is in issue here:

> "Sallie god Bless you
>   Ben so sweet and good to me
>   god Bless all the Ladies that
>   been so sweet & good to me
>   and you Mr. & Mrs. Conden
>   Sallie you know my troubles Better
>   than eny one else 35 year
>   Since 1914 tell Mr. Meeks to
>   help on Burial
>   no Doctor and not able
>   To go to one Salle this
>   is to much on you
>   Sallie god Bless you
>   for being so Sweet & good To
>   me this house blong to you
>   and every          Sidney Smith
>                  every thing in it
>   Dear Sallie you was so sweet
>   and good To Me"

An attempt was made to probate the foregoing writing as the will of Sidney Smith.   The Probate Court

556

Sallie god Bless you
Ben so sweet and good Tow me
god Bless all the Ladies tha
been so sweet + good Tow me
and you Mr + Mrs Cauten etl.
Sallie you Know I humbld Better
than eny one Eled 35 year
Since 1914 till Mr Meaks To
help on Burial
no Doctors. and not able
To go To one Sallie this

To To much on you

Sallie god Bless you
you being so sweet + good To
me this House belong To you
and bury Sidney Smith
every thing in it

Dear Sallie you was so sweet
and Good To me

refused to admit it to probate as such and Sallie Smith has appealed on that point, but the Court held that $600 cash in the house, at the time of Smith's suicide, was the property of Sallie Smith, having been given to her by Sidney Smith on the day he killed himself, and the Administrator has appealed from that finding. The evidence sustains the Court's finding that Smith had made a gift of the money to Sallie Smith before taking his own life, but it is not necessary for this Court to pass on the question of the jurisdiction of the Probate Court in respect to the gift, because the undisputed evidence is that Sallie Smith, to whom Sidney Smith made the $600 gift, is one and the same person as the "Sallie" named in the instrument we hold to be the valid holographic will of Sidney Smith. Sallie Smith was his sister-in-law, being the widow of a deceased brother, and for many years had been the loyal and faithful housekeeper for Sidney Smith who was an invalid.

The writing in question meets all the essential requirements of an holographic will from any practical point of view. There is no contention that every word of it is not in Smith's handwriting. It is not disputed that Smith was possessed of testamentary capacity, nor is it suggested that the will is tainted with fraud, constraint, or undue influence.

The point which has given us some concern is whether the requirement that the signature must be at the end of the will has been met. "While the requirement of a Statute that a will be signed at the foot or end seems on the face of things to present a simple question, the cases are difficult in practical application. A signature may be in such a position that it will be held without question to be at the foot or end of the instrument, and again it may be so far from the end that all will agree that the instrument is not signed at the end: but, between these extreme cases occur a multitude of cases in which the question whether the Statute has been observed is one of great difficulty, each of which must be determined largely in the light of its own facts." (57 Am. Jur., 214).

In the case of *Brochers* v. *Brochers,* 145 Ark. 426, 224 S. W. 729, this Court held that an unsigned postscript to a letter written by Brochers to his father was not a valid holographic will because it was not signed at the end. However, the case at bar is readily distinguishable from the Brochers case and we do not mean to impair the holding of the opinion in the Brochers case, although in the new Probate Code it is not provided that a holographic will has to be signed at the end. (Ark. Stat., § 60-404.) This section of the Code is not applicable in this case for the reason that Smith died a few months prior to the effective date thereof. In the Brochers case, the facts were stated by the Court as follows:

"At the time of executing the alleged will, Charles S. Brochers was a soldier in the United States Army at Camp Beauregarde. A number of years prior to his enlistment in the Army his mother and father had separated and obtained a divorce. Charles S. Brochers was the business manager of a bakery operated by his mother, and during his entire life had resided with her. He was 28 years of age. During his military service he procured a policy of insurance from the War Risk Bureau of the United States government, in which policy his mother was designated as the beneficiary. At the time the alleged will in question was filed for probate, the mother of the deceased had been drawing monthly payments of $57.60 under the terms of the policy from the United States government. The alleged will offered for probate by appellant consisted of a statement in the nature of a postscript to a letter written by Charles S. Brochers to his father from Camp Beauregarde, Louisiana. The statement itself was not signed but appeared after the signature of the deceased, and is as follows: 'Papa, if I die for my country, I want you to receive my insurance money. Goodbye.' . . . The letters written by Charles S. Brochers to his mother both before and after the letter in question, contained the information that an allotment had been made to her and that he had procured an insurance policy in which she had been made the beneficiary."

The instrument we hold to be the valid holographic will of Smith was written with the sense of impending death and there is no question about the testamentary qualities of the will. The evidence is that Smith was not an educated man and it is obvious that the words "everything in it", appearing under his signature, form a part of the sentence before the signature. There is not the least intimation or suggestion that the words appearing immediately under the signature and a part of the sentence before the signature are not in the handwriting of Smith. In the case of *Musgrove* v. *Holt,* 153 Ark. 355, 240 S. W. 1068, it is stated:

"In *Owens* v. *Douglas,* 121 Ark. 448, 181 S. W. 896, the Court said: 'The purpose of our Statute in requiring wills to be signed at the end thereof is to provide against fraud, and this statutory requirement must not be frittered away by loose interpretation.' When this will is scanned as a whole, there is no such intervening space between its provisions as to suggest that the will was not signed at the end of the testamentary dispositions, and, therefore, at the end of the will." The writing at the very bottom of the will in the case at bar is not a dispositive provision and does not affect the will one way or the other.

The validity of the will is not affected by superfluous or useless words which follow the signature. (57 Am. Jur. 440). The purpose of the Statute in requiring wills to be signed at the end is to prevent fraud. No fraud is suggested in this case and, under all the facts and circumstances, we think there was a substantial compliance with the Statute as shown by the will itself set out above.

In the light of all the facts in the case we are of the opinion that the writing in question is the valid will of Sidney Smith. Therefore, since the $600 cash was in the house at the time of Smith's death, Sallie Smith is the owner of it under the terms of the will, regardless of whether Sidney Smith had previously given her the money, and, therefore, the gift feature of the case is moot.

Reversed on the cross-appeal with directions to admit the will to probate as the valid will of Sidney Smith,

the costs to be assessed against the appellant Administrator.

GEORGE ROSE SMITH, J., dissenting. I am unable to agree that this will was signed at the end. In the Owens case, cited by the majority, we held that the will must be signed at the end of the testamentary clauses. As far as a will like this one is concerned, the authorities are in complete agreement as to what constitutes the end of the will. The end is "the physical termination of the testamentary provisions." Alexander on Wills, § 422. "Of course, if a dispositive provision is clearly below or after the testator's signature, the will is not signed at the end." Atkinson on Wills, § 118.

Here the testator had conveyed the house to his sister-in-law; so the sole dispositive clause in the will is the words, "and everything in it." The last three of these words are clearly below the testator's signature. To hold that this will is signed at the end is simply to ignore the statute and every authority on the subject.

It will not do to say that the statute was intended to prevent fraud, and here there is no suspicion of fraud. The requirement of two witnesses to an attested will is also intended to prevent fraud, but I do not suppose the majority would brush aside the need for two witnesses in cases where no fraud was suggested. The inescapable fact is that this will was not signed at the end, and no amount of judicial discussion can change that fact.