Raymond Dykes CLARK and Florence Elizabeth Sherman *v.* NATIONAL BANK OF COMMERCE of Pine Bluff and William Edward Pratt

90-244                                                  802 S.W.2d 452

Supreme Court of Arkansas
Opinion delivered January 28, 1991

*Spencer, Spencer, Depper & Guthrie*, by: *Robert L. Depper, Jr.*; and *Bart Mullis Law Firm*, by: *Bart Mullis*, for appellant.

*Brockman, Norton* and *Taylor*, by: *E.W. Brockman, Jr.* and *Zachary Taylor*, for appellee.

JACK HOLT, JR., Chief Justice. This appeal comes from an order of the Probate Court of Jefferson County, admitting to probate the will of Ms. Nell N. Willey upon the petition of appellees, National Bank of Commerce and William Edward Pratt. The will is being contested by appellants, Raymond Dykes Clark and Florence Elizabeth Sherman, Ms. Willey's nephew and niece.

The appellants contend that the will should be invalidated and that the estate should pass through intestate succession as the trial court erred in finding (1) that certain language written beneath the attestation clause was not dispositive in nature and that the will was thus signed at the end, as required by Ark. Code Ann. § 28-25-103(b)(5) (1987), and (2) the will admitted to probate was the last will of the testatrix. We find no error and affirm.

On approximately June 14, 1988, Iris Rushing, a trust operations officer employed by the National Bank of Commerce of Pine Bluff, Arkansas, was summoned by Ms. Willey to her

condominium in order to discuss Ms. Willey's wishes for drafting her last will and testament. Ms. Rushing was to relay these wishes to Ms. Willey's attorney, Louis Ramsay. Mr. Ramsay then drafted a will from Ms. Rushing's notes of the meeting and from a telephone conference he had with Ms. Willey, Mr. Ramsay gave two identical copies of the proposed will to Ms. Rushing to deliver to Ms. Willey, along with a memorandum indicating that the will was a "rough draft" and suggesting that Ms. Willey make any changes or clarifications she felt necessary for a final draft.

On Friday, June 17, 1988, Ms. Rushing took the documents to Ms. Willey's home where she was joined by Marilyn Ilg, a friend of Ms. Willey's. Ms. Willey indicated that she wished to make some additions to the will and, at Ms. Willey's direction and in the presence of Marilyn Ilg, Ms. Rushing made handwritten additions to one of the two copies, which is now considered to be the will in probate. The only addition now being challenged on appeal appears below Ms. Willey's signature and the attestation clause to the will. Ms. Rushing testified that she wrote the clause there in order to have more room to write and that it was added before the will was executed. The clause reads as follows:

> I designate my cousins Linda Pratt and Nancy Harkness to dispense with my personal things such as and including furnishings, bric-a-brac, silver, china, crystal and objects of art after bequests and their choices have been made.

Ms. Willey signed both copies which were witnessed and attested to by Ms. Rushing and Ms. Ilg. On Monday, June 20, 1988, Ms. Rushing delivered both documents to Mr. Ramsay with directions to make the additions. Before Mr. Ramsay was able to accomplish a new writing of the will, Ms. Willey died.

The will containing Ms. Willey's additions was offered and admitted to probate, with the exception that the provision written below her signature would be disregarded and stricken, along with a handwritten bequest not at issue on this appeal. From this ruling, appellants take exception.

While we review probate cases *de novo* on appeal, we will not reverse the findings of the probate judge unless such findings are clearly erroneous. *Magnum v. Estate of Fuller*, 303 Ark. 411, 797 S.W.2d 452 (1990).

The appellants first claim that the language we quote, written beneath the signatures of the testatrix and the attesting witnesses, was dispositive in nature and that Ms. Willey "clearly intended to make specific bequests to Linda Pratt and Nancy Harkness . . . while empowering them to distribute any items they did not want.. . ." This being so, appellants claim the will is not signed at "the end" and thus violates Ark. Code Ann. § 28-25-103(b)(5) (1987) which, in turn, invalidates the will. This section provides as follows:

> (a) The execution of a will, other than holographic, must be by the signature of the testator and of at least two (2) witnesses.

> \* \* \* \*

> (5) In any of the above cases, the signature must be at the end of the instrument and the act must be done in the presence of two (2) or more attesting witnesses.

■ We have held, and it appears to be the general rule, that non-testamentary, *non*dispositive language appearing below the signature of the maker of a will, will not invalidate the instrument. *See Owens* v. *Douglas*, 121 Ark. 448, 181 S.W. 896 (1915); *Musgrove* v. *Holt*, 153 Ark. 355, 240 S.W. 1068 (1922); *Weems, Adm'r* v. *Smith*, 218 Ark. 554, 237 S.W.2d 880 (1951); 94 C.J.S. *Wills*, 177(3)(c) (1957).

In *Owens* v. *Douglas*, *supra*, we disagreed with the appellants' contention that the will was not signed at the end because the signature did not directly follow the testamentary or dispositive clauses, but was placed at the very end of the document. We stated that "[t]here were no testamentary clauses following the signature of the testator, and it is certain that it was his intention, by his signature, to authenticate and make his own the testamentary clauses that preceded it." 121 Ark. at 452, 181 S.W. at 899.

Likewise, in *Musgrove* v. *Holt*, *supra*, involving a holographic will, this court noted that there was "no testamentary disposition after the signature of Mrs. Porter" (the testatrix) and refused to invalidate the will on the basis of the appellants' contentions that there were blank spaces between paragraphs and that the signature did not follow immediately after the dispositive clauses.

We stated in *Weems, Adm'r* v. *Smith, supra*, again involving a holographic will, that "the purpose of the statute in requiring wills to be signed at the end is to prevent fraud" and that where no fraud was indicated, the will would not be invalidated. In *Weems*, the last three words ("everything in it") of a sentence beginning above the signature were written below the signature, in addition to the words, "Dear Sallie you was so sweet and good to me." We held that the words appearing below the signature were clearly intended to complete the sentence above, and that since the writing was not dispositive, it would not affect the will one way or another.

Similarly, we agree with the trial court, here, that the language was nondispositive and there was, therefore, no violation of section 28-25-103(b)(5). The decedent instructed Linda Pratt and Nancy Harkness to "dispense" with the personal property described. This language indicates that the decedent had in mind the administration of her property, rather than the wish to make a bequest.

■ At most, because the clause tells Linda Pratt and Nancy Harkness to dispense with the items "after bequests and *their choices have been made*", (emphasis added), the paragraph could be labeled partially ambiguous. "Their" could refer to Ms. Pratt and Ms. Harkness or "their" could refer to the legatees. However, when a will is subject to a two-fold construction, it is the duty of the court to consider the will as a whole and to reach the real purpose and intention of the testator. *Angel* v. *Angel*, 280 Ark. 21, 655 S.W.2d 373 (1983). Also, as stated in *Carroll* v. *Robinson, Ex'r*, 248 Ark. 904, 454 S.W.2d 329 (1970), when the expression a testator uses is really ambiguous and is fairly capable of two [2] constructions, only one of which would produce a legal result, it is a fair presumption that the testator meant to create a legal, rather than an illegal, interest.

■ Oral testimony is admissible for the purpose of showing the meaning of words when they are ambiguous (*see Armstrong* v. *Butler*, 262 Ark. 31, 553 S.W.2d 453 (1977)), and the testimony at trial supports our interpretation that the clause was not dispositive.

Marilyn Ilg testified that Ms. Willey added the language in question because "she was very concerned about people going

through her belongings, and she wanted to be sure it wouldn't be like an open estate sale where just strangers would be going through her things."

Louis Ramsay testified that he considered the language to be surplusage since most of the decedent's property would be disposed of by bequests and that the disposition of the items in question "could be done by the executrix, but if they had wanted it in there, if she's insisted, the next time I would have put it in. . . ."

Furthermore, as Mr. Ramsay testified, it appears that no estate assets would have remained to be dispensed with or divided since the will contained a residuary bequest section, followed by a contingent residuary bequest to the Salvation Army.

█ We have stated that the paramount principle in the interpretation of wills is that the intention of the testator will govern. *Motes/Henes Trust* v. *Motes*, 297 Ark. 380, 761 S.W.2d 938 (1988). Also, in the absence of fraud or deception in the execution of a will, we will avoid strict technical construction of statutory requirements in order to give effect to the testator's wishes. *Faith* v. *Singleton*, 286 Ark. 403, 692 S.W.2d 239 (1985). *See also Hanel* v. *Springle, Adm'r*, 237 Ark. 356, 372 S.W.2d 822 (1963).

Under the circumstances, we hold that the language of the disputed provision, in addition to evidence presented at trial, reflects that the addition was not dispositive but, rather, administrative in nature. To require strict compliance with the statute would, in this instance, defeat Ms. Willey's will and her apparent intentions with regard to the disposition of her property.

As a final point, appellants contend that the proof at trial failed to establish which copy of the will was last executed by Ms. Willey and, thus, the requirements for the admission of a will to probate under Ark. Code Ann. § 28-40-119(a) (1987) were not met.

Section 28-40-119(a) requires, among other things, that the court find that the instrument is the testator's last will. Appellants further argue that since the order of execution cannot be determined, neither will can be probated and that each will revokes the other.

The short answer to these arguments is that the evidence presented at trial sufficiently established that the document containing Ms. Rushing's interlineations was the last will executed and, as such, is Ms. Willey's last will and testament.

Mr. Ramsay testified, several times, that he understood, from Ms. Rushing, that the will with the interlineations was the second and last will signed. Mr. Ramsay explained to the trial court, "we checked that a couple of times because that was essential to the research that we were doing about the will that would be probated. My clear understanding was that that was the second will executed; and the first will, the one that does not have the interlineations, was the first will. . . ." Mr. Ramsay stated that both he and his law partner, Dan Harrelson, checked the sequence of execution with Ms. Rushing when she delivered the will to their office.

The appellants make much of the fact that Ms. Rushing testified that she could not recall exactly which document was signed first. They claim that Mr. Ramsay's testimony depended entirely on the credibility of Ms. Rushing, who was too unreliable. Although Ms. Rushing could not recall the order in which Ms. Willey signed the documents, she testified, "As I said before, it was her intention that the one I had written on would be her last will and testament."

As we stated earlier, the purpose of the law relative to the execution of wills is, and should be, to protect testamentary conveyances against fraud and deception and not to impede them by technicalities. *Hanel* v. *Springle, Adm'r, supra.* We cannot say that the trial court was clearly erroneous in holding that the will was valid or in finding that Ms. Willey intended to bequeath her property by a will instrument which contained additions and interlineations she dictated to Ms. Rushing, and which was executed by the testatrix after those additions and interlineations were made.

Lastly, pending before us is the appellees' motion to strike certain transcript excerpts from the appellants' reply brief. These portions of the record were not initially abstracted and since an initial abstracting deficiency cannot be cured in the reply brief, the motion is granted and the reply brief is disregarded in this appeal. *See Weston* v. *Ponder,* 263 Ark. 370, 565 S.W.2d 31

(1978).

The holding of the trial court is affirmed.