CARTWRIGHT *v.* CARTWRIGHT.

Opinion delivered April 16, 1923.

1. WILLS—LETTER AS TESTAMENTARY PAPER.—A testamentary paper is valid as such, even in the form of a letter, where it is proved to be in the handwriting of the testator.

2. WILLS—SIGNATURE.—A testator may sign his will by an abbreviation of his full name, or merely by his initials.

3. WILLS—RIGHT OF INSTRUMENT TO PROBATE.—Whether an offered instrument is testamentary in form or substance so as to be admitted to probate is a question of law for the court to determine from the face of the instrument.

4. WILLS—FUNCTIONS OF PROBATE COURT.—The functions of a probate court, when a will is propounded for probate, are limited to inquiring and determining whether the instrument presented as the last will of the decedent was executed in the manner prescribed by statute and when he was legally competent to execute it, and free from duress, menace, fraud and undue influence, but questions as to property rights which might arise out of a construction of the terms of a will are not to be determined in a proceeding for the probate of a will.

5. WILLS—SUFFICIENCY OF LETTER AS WILL.—A letter from a deceased soldier to his wife, which, referring to a policy of war risk insurance in the sum of $5,000 which was made payable to his father, stated: "You will get the $5,000 when I die," *held* suf-

ficient to constitute his last will and testament, and therefore entitled to probate as such.

Appeal from Faulkner Circuit Court; *George W. Clark,* Judge; affirmed.

*J. C. & Wm. J. Clark* and *J. H. Carmichael,* for appellant.

Beneficiary in insurance policy could not be changed by will. Appellant was named beneficiary in the will. The testimony attempting to establish the letter as a will was incompetent and unsatisfactory. 32 Ark. 338; 85 Ark. 430; 144 Ark. 286. Note 62 L. R. A. 836. Letter only expressed a conclusion based on a contingency. 11 Am. Law Reports, 832. No intention of making a will. Subdivision 3, § 10494, Crawford & Moses' Digest; also subdivision 5, 1 Schouler on Wills, secs. 278, 279; 2 Am. Dec. 19; 11 Cash 532: Definition *"animo testandi,"* Rapalge & Lawrence's Dictionary; 187 Mass. 120, 72 N. E. 499; 105 Am. St. Rep. 386; 17 Am. Law Rep. 372.

*R. W. Robins,* for appellee.

No testimony in the record of any provision in the policy prohibiting a change of beneficiary by will. Will established by competent and satisfactory testimony. Cases cited by appellant as to introduction of signature card for comparison not applicable to case made. 22 C. J. 775. No objection made to introduction of card. Secs. 2250, 2251, Crawford & Moses' Digest; § 10498, Crawford & Moses' Digest; 1 Lewis' Blackstone, 417; 1 Schouler on Wills, § 378; 1 Alexander, Wills, 195; 8 A. L. R. 182, cited, has no application to the case. Letter is a valid holographic will. 80 Ark. 204; 144 Ark. 429; 193 U. S. 411, 48 L. ed. 73; 30 Am. & Eng. Enc. of Law, 571, 572; 86 L. T. R., (N. S.) 119; 86 L. T. R., (N. S.) 120; 21 L. T. 653; 39 Vt. 498; 53 Me. 561; 184 N. Y. P., 399; 109 S. E. (Va.) 186.

McCULLOCH, C. J. This is an appeal from a judgment of the circuit court of Faulkner County, rendered on appeal from the probate court, admitting to probate

an instrument in the form of a letter as the last will and testament of Luster Cartwright, deceased.

Cartwright was an American soldier in the late war, and was killed in action on one of the battlefields of France. His death occurred on October 14, 1918. He lived in Faulkner County, was a young farmer, and was drafted into the army, sent to Camp Pike, and thence to Camp Beauregard. While in the last named encampment, he went back home on a furlough, and intermarried with a young woman to whom he had previously given his promise of marriage. After his return to Camp Beauregard he wrote and mailed to his wife, Mell Cartwright, the following letter which is presented as a testamentary paper:

"Mrs. Mell Cartwright: My sweet little wife, how are you? Oh, I see you looking me straight in the face. * * * I think some time of coming back to you and taking my life while there, for it will never be of any pleasure here, and I could see you, and then you could care for my place of rest. Now I know I should not write you like this, yet I want you to know how dearly I love you. * * * We are having a very good time now, and, my, how hot. I begin running and jumping this morn, we had a 9 ft. wall to climb, ramps to run over, and a trench to jump. Well, I miss getting my pay this mo. So it will be in July, about the 15th before I get any money, and I only have about $9 in my possession. Of course I have some in the bank, and I could draw out but I am going to do without for you may need it some day, and I get my clothes and eats; will not need to go to town. * * * If I had only thought so when we were first married, everything might of been O. K. But I don't believe so now. Oh, kido, you are on my heart all the time. I believe it will weaken my mind if there is not some relief soon, of course in a few days it may be some dif. But my love will never grow old for you; there will never a day or night but what I will be longing for you. It may be I will see you soon, which I could see it that way I

feel like I have seen you and the rest of my people my last time.   *   *   *   Say, my precious Darling, I think I can get an allotment made soon. You will get $15 of my pay and $15 from the government made soon. You will get $15 of my pay and $15 from the government, then I will get $4.75 per mo. We both will draw $45 a mo. then I have to pay insurance & Liberty bonds out of my part, then you will get the $5,000 when I die, so you should not want for anything except me. Lus.''

The letter is of considerable length, and nearly all of it is devoted to expressions of endearment and narratives of his daily life in camp, and the following sentences, in conclusion, are the only words which purport to be, or are claimed to be, testamentary:

''I think I can get an allotment made soon. You will get $15 of my pay and $15 from the government made soon. You will get $15 of my pay and $15 from the government, then I will get $4.75 per mo. We both will draw $45 a mo. then I have to pay insurance & Liberty bonds out of my part, then you will get the $5,000 when I die, so you should not want for anything except me.                    (Signed)          ''Lus.''

There are other expressions in the letter which show that it was written in contemplation of the writer's being sent to the battle area of France and the possibility of his being killed in battle.

The attempt in offering this instrument of writing is to establish it as a holographic will within the meaning of our statute on the subject, which provides as follows:

''Where the entire body of the will and the signature thereto shall be written in the proper handwriting of the testator or testatrix, such will may be established by the unimpeachable evidence of at least three disinterested witnesses to the handwriting and signature of each testator of testatrix.''   Crawford & Moses' Digest, § 494, 5th subdivision.

Probate of the instrument was contested by appellant, the father of decedent. The issues were submitted

to a jury, and the verdict was in favor of appellee, admitting the instrument to probate.

At the trial there were three witnesses introduced by appellee, who testified that they were familiar with the handwriting of decedent, and that the body of the letter offered for probate, as well as the signature, was in his handwriting. Other witnesses testified, by comparison with other writings proved to be in the handwriting of decedent, that the whole of the letter and the signature were in the handwriting of decedent. This issue was submitted to the jury, and, the evidence being in conformity with the strict requirements of the statute, its weight was a question for the jury. The evidence was legally sufficient to sustain the finding of the jury on that issue.

If the offered instrument is testamentary in effect, its particular form is unimportant, and it is well established by decisions of this court, as well as those of other courts, that a testamentary paper is valid as such, even in the form of a letter, where it is proved to be in the handwriting of the testator. *Arendt* v. *Arendt,* 80 Ark. 204; *Murphy* v. *Murphy,* 144 Ark. 429.

The signature was, as before stated, proved to be in the handwriting of decedent, and the fact that it was not signed in his full name does not lessen its effect as his signature, for, according to the authorities on this subject, a valid signature may be made to such an instrument by an abbreviation of the full name, or merely by initials. 28 R. C. L. 163; *Pilcher* v. *Pilcher,* 117 Va. 356; note to L. R. A. 1915-D, 902; note to *Estate of Fay* (Cal.), 104 Am. St. Rep. 29.

It is contended by counsel for appellant that the language of the offered instrument is not sufficient to make it testamentary in its character, or to manifest an intention to make a will, and in support of this contention it is proved that the only property or estate left by decedent was a policy of war risk insurance in the sum of $5,000, which was made payable to his father, the appellant, and had never been changed during the lifetime

of decedent, unless the letter in controversy is sufficient for that purpose.

The question whether or not an offered instrument is testamentary in form or substance so as to be admitted to probate is one of law for the court to determine from the face of the offered instrument. If its language is testamentary, then it may be admitted to probate if proved in accordance with the statute, otherwise it may not be admitted to probate.

It is not the function of either court or jury to interpret or construe the will for the purpose of determining its effect upon the distribution of the property of the testator. If it purports to bequeath or devise any property, either in general or particular terms, to an individual or class of individuals, then it is of a testamentary character, and may be admitted to probate. The rule of law on the subject of what may be considered in admitting a will to probate is stated as follows in 28 R. C. L. p. 377:

"The functions of a probate court when a will is propounded for probate are limited to inquiring and determining whether or not the instrument presented to it as the last will of the decedent was executed by him in the manner prescribed by statute, and when he was legally competent to execute it, and free from duress, menace, fraud and undue influence. Questions as to the property rights of devisees, legatees, heirs, and others which might arise out of a construction of the terms of a will are not to be determined in a proceeding for the probate of a will, and therefore the mere probating of a will is not final and conclusive as to the construction of the instrument. The validity of particular testamentary gifts contained in the will are not involved in the proceedings, and the orphans' court, in admitting to probate the will of a married woman, disposing of her separate property, does not decide upon the right of disposal, but merely the *factum* of the instrument. Nor is the question of ownership by the testator of property

claimed to belong to his estate involved in or determined by the probate of his will."

See also to the same effect: Gardner on Wills, p. 335; note to *Graham* v. *Burch* (Minn.), 28 Am. St. Rep. 339.

The question whether or not the property of the decedent consisted solely of a policy of insurance made payable to another beneficiary, and could not be changed by will, is one which must be determined in other proceedings than the present one, to admit the will to probate.

The most serious question on this branch of the case is whether or not the language itself is sufficient to make it of a testamentary character, and, as before stated, this involves an inquiry whether or not it mentions property, either in general or particular terms, upon which the testament is to operate. While this question cannot be said to be free from doubt, we are of the opinion that the language is sufficient to show an intention on the part of the testator to bequeath to his wife a certain amount of property in the form of life insurance. The particular language which has this effect is as follows: "I have to pay insurance & Liberty bonds out of my part, then you will get the $5,000 when I die, so you should not want for anything." This clearly has reference to life insurance, and manifests a present purpose of declaring a bequest, rather than an intention to make such provision in the future. The auxiliary verbs will and shall are often erroneously used interchangeably as signifying futurity, and, when used in the first person, as expressing a fixed design. The letter shows on its face that the testator was not a person of much education, and is not supposed to have had any definite idea as to the exact meaning of particular words, but it is clear, we think, that he meant to make a definite provision for his wife as an expression of his last will.

The language of the will is very much like that involved in a recent Virginia case which the court, with

apparently some hesitation, declared to be sufficient to constitute the last will and testament of a soldier enlisted in the American army. *Rice* v. *Freeland* (Va.), 109 S. E. 186. Of course, if the language was sufficient to be testamentary, it follows that it manifests the *animus testandi.*

It cannot be said, as urged by counsel for appellant, that the testament is based upon a condition which did not happen. Of course, all testaments are to take effect upon the death of the testator, and in this sense it is conditional upon death before revocation. But there was no condition expressed in the letter now before us for consideration, unless, possibly, the condition that he would not survive the war, and if it be held that it was based upon that contingency, it has come to pass so as to make the will effective.

We have therefore reached the conclusion, upon the whole, that the instrument was properly admitted to probate as the last will and testament of the decedent, and that there is no error in the proceedings.

Judgment affirmed.

HART and HUMPHREYS, JJ., dissent.