GIBSON *v.* TALLEY.

4-7107                                           174 S. W. 2d 551

Opinion delivered July 5, 1943.

*Smith & Judkins* and *W. M. Ponder,* for appellant.

*Wayne W. Owen,* for appellee.

McFADDIN, J.   This appeal involves but one question: venue. Appellants John K. Gibson and Josephine Gibson executed their note to the Bank of Swifton as follows:

"$1034.18                    Swifton, Ark. August 18, 1937

"November 1, 1937, after date, I, we, or either of us, promise to pay to the order of The Bank of Swifton one thousand thirty-four and 18/100 dollars, for value re-

ceived at The Bank of Swifton, Swifton, Arkansas, with interest at the rate of eight (8) per cent. per annum from date until paid. Interest due and payable annually, and if not paid when due, to become as principal and bear a like rate of interest until paid. And further agree that if this note is not paid at maturity to pay all cost of collection including an attorney's fee. The makers and endorsers of this note hereby severally waive presentment for payment, notice of non-payment and protest and the consent given for the time of payment to be extended without notice.

"Jno. K. Gibson

"Josephine R. Gibson" (Tr. 15)

The bank indorsed the note to W. D. Morgan, and he indorsed it to appellee, Talley. Talley brought suit against the Gibsons and Morgan in Pulaski county, serving Morgan in Pulaski county, where he resided, and serving the Gibsons in Lawrence county, where they resided. The Gibsons moved to quash service claiming they were entitled to be sued in the county of their residence, and that they were not joihtly liable with Morgan on the note because they were primarily liable as makers and Morgan was only secondarily liable as indorser. From a trial on the merits and a final judgment against Morgan and the Gibsons, comes this appeal by the Gibsons.

We hold that the Gibsons were properly sued in Pulaski county since Morgan was a resident of Pulaski county and was served in that county and since judgment was rendered against Morgan along with the Gibsons. There was no claim that Morgan and Talley had entered into any collusion to obtain venue in Pulaski county of the suit against the Gibsons. This action on the note comes within § 1398 of Pope's Digest, which is: "Every other action may be brought in any county in which the defendant, or one of several defendants, resides, or is summoned."

Section 1400 of Pope's Digest provides: "Where any action embraced in § 1398 is against several defendants, the plaintiff shall not be entitled to judgment against any

of them on the service of summons in any other county than that in which the action is brought, where no one of the defendants is summoned in that county or resided therein at the commencement of the action, or where, if any of them resided, or were summoned in that county, the action is discontinued or dismissed as to them, or judgment therein is rendered in their favor, unless the defendant summoned in another county, having appeared in the action, failed to object before the judgment to its proceeding against him.''

These sections must be considered along with § 521 of Pope's Digest, which is from the Revised Statutes of 1837, and which reads: ''All indorsers or assignors of any instrument in writing assignable by law, for the payment of money alone, on receiving due notice of the nonpayment or protest of any such indorsed or assigned instrument in writing, shall be equally liable with the original maker, obligor or payee of such instrument, and may be sued for the same at the same time with the maker, obligee or payee thereof, or may be sued separately.''

Under the last-quoted statute, Morgan, as an indorser, became *equally liable* with the makers and might be sued at the same time with the makers, provided that Morgan received ''due notice of the nonpayment or protest.'' But the note sued on contained an express waiver of notice of nonpayment and protest; and the law does not require the holder of a note to give a notice that has been expressly waived. In *Walker* v. *Walker,* 7 Ark. 542, this court said, speaking on this subject: ''It follows *a fortiori,* that if by prior arrangements between any of the parties, the necessity of notice has been expressly or impliedly dispensed with as between these parties, no notice need be given, and the want of it is entirely excused; for here the maxim strictly applies. *Quilibet potest renunciare juri pro se introducto.''* (Which in translation is: 'Anyone may, at his pleasure, renounce the benefit of a stipulation or other right introduced entirely in his own favor.')

So the case stands here as though Talley had given Morgan due notice under the section that is now 521 of

Pope's Digest, and that section says that the indorser shall be "equally liable" with the maker. That statute makes Morgan and the Gibsons equally liable on the note in this case, and destroys the Gibsons' contention concerning the weight and degree of liability.

It is undoubtedly true that the maker and indorser of a note are not liable in the same degree and weight. In 8 Am. Jur. 557, it is stated: "At common law, in order to maintain an action *ex contractu* against a number of defendants, the plaintiff must show a joint liability in all; and since the liabilities of the maker and the indorser of a promissory note are not joint but several, and are dependent upon substantially different conditions and contingencies, the maker and indorser cannot under the common law be joined as defendants in an action on the note, even though the indorsee is also the payee of the instrument. In many jurisdictions, however, by virtue of statutory authorization, a joint action may be maintained against the acceptor, the drawer, and indorsers of a bill of exchange or against the maker and indorsers of a note, as the case may be." To the same effect see 10 C. J. S. 1182.

In Ann. Cas., 1912D (vol. 25), p. 1201, there is a splendid not on the right to maintain a joint action against maker and indorser of a promissory note, and the general rule, stated in American Jurisprudence above, is there set out and discussed with citation of many cases; and Arkansas is listed as one of the States that has a statute permitting the maker and indorser to be jointly sued. Our statute is the statute that is now § 521 of Pope's Digest; and the case recognizing this statute and so declaring the law is *Taylor* v. *Coolidge,* 17 Ark. 454.

Appellants cite *Lingo* v. *Swicord,* 150 Ark. 384, 234 S. W. 264, where this court held that the maker and the indorser were not jointly liable on the note and where a plea of venue was sustained; and appellant's contention makes it proper that we review the law and the cases leading up to *Lingo* v. *Swicord* to see how the error occurred in that decision.

Sections 1398, 1399 and 1400, of Pope's Digest, were respectively §§ 96, 97 and 98 of the Civil Code adopted in

1869, and these sections have come down to us without change and have been in each digest of the statutes since 1874. We refer here to the section numbers as contained in Pope's Digest. There is nothing in § 1398 of Pope's Digest that requires that the defendants shall be "jointly liable" before a nonresident of the county can be sued along with a resident of the county. We find no case where the idea of requiring the defendants to be "jointly liable" was ever mentioned until *Wernimont* v. *State,* 101 Ark. 210; 142 S. W. 194, Ann. Cas. 1913D, 1156; and in that case this court said: "It is the policy and spirit of our law, enacted into statute by our Legislature, that every defendant shall be sued in the township or county of his residence. To this general principle there are statutory exceptions, chiefly in cases where there is a *joint liability* against two or more defendants residing in different counties. In such cases it is provided that suits may be brought in the county of the residence of any of the defendants, and service of summons can then be had upon the other defendants in any county, thereby giving jurisdiction over their persons to the court wherein the suit is thus instituted. Kirby's Digest, §§ 6072 and 4558." And again the court said: "Knowing that under our statutes a defendant must be sued in the county or township of his residence, Wernimont, in order to evade these plain provisions, conceived the plan of having a resident of Pulaski county indorse the notes so that he apparently would be *jointly liable* upon them, and thus could be sued as one of the defendants."

Now in using the expression "joint liability" in the first quotation above, and in using the expression "jointly liable" in the second, it is clearly apparent that the court used those expressions to mean "defendants liable on the same cause of action," or "parties defendant in the same action." The words were not used to mean "jointly and severally liable" as that expression is used in the negotiable instruments law. The conclusion reached in the Wernimont case could not have been logically reached if the words were intended there to have the technical meaning used in the negotiable instruments law. There is distinction between joint action and joint lia-

bility. Bouvier's Law Dictionary (3rd Ed.) p. 1702, says of joint action: "An action brought against two or more defendants."

The Wernimont case was in 1911; and in 1920, the words "jointly liable" appeared in the venue case of *Hoyt* v. *Ross,* 144 Ark. 473, 222 S. W. 705. A study of that case shows that it was correctly decided, but the language in the concluding paragraph was unfortunate. It was not a decision on the degree of liability; it was a decision of *no liability* against the resident defendant. There was no cause of action presented to the court where the Oilar-Overland Company and Ross were liable *on the same cause of action;* and consequently Ross' claim of privilege of venue should have been sustained. Unfortunately the court there used the words "jointly liable," meaning there was no cause of action where both of the defendants were liable. In the concluding paragraph of the opinion, the court said: "A co-defendant jointly liable"; but the court did not mean a co-defendant whose liability was of the same grade and weight as that of the other defendant; it meant that the defendants must be liable on the same cause of action. The citation to the case of *Stiewel* v. *Borman,* 63 Ark. 30, 37 S. W. 404, clearly shows the exact meaning.

Thus the law existed until *Lingo* v. *Swicord* in 1921, where the unfortunate language of *Wernimont* v. *State* and *Hoyt* v. *Ross* (as just pointed out) was allowed to creep into the opinion of the court; for in *Lingo* v. *Swicord* the words "jointly liable," as used in the said two previous decisions, were unfortunately used in the sense in which the words are used in the negotiable instruments law; and this court there erroneously (as we now see it) held that the defendants would have to be liable in equal weight and degree before they could be sued in the same county in the face of a plea of venue.

Two things are wrong with *Lingo* v. *Swicord:* (1) The use of the words "jointly liable" as heretofore mentioned; and (2) the failure of the court to notice the section that is now § 521 of the Digest, which was § 9, chapter 11 of the Revised Statutes of 1837, and which was the basis of the decision in *Taylor* v. *Coolidge,* 17 Ark. 454.

It should here be noted that a careful study of the records of this court fails to disclose any brief filed by the appellee in *Lingo* v. *Swicord,* and this helps to account for the error into which the court fell in that case. If either the statute that is now § 521 of Pope's Digest, or the case of *Taylor* v. *Coolidge* had been called to the attention of the court in *Lingo* v. *Swicord,* undoubtedly a different conclusion would have been reached.

It is with a great deal of trepidation that any court should overrule a previous decision. Rarely, if ever, should this be done when the decision is a rule of property. In 54 C. J. 1110, a rule of property is defined as: "A settled legal principal governing the ownership and devolution of property; the decisions of the highest court of a state when they relate to and settle some principle of local law directly applicable to title. In the plural, those rules governing the descent, transfer, or sale of property, and the rules which affect the title and possession thereto." *Lingo* v. *Swicord* involved only a rule of adjective law; and not a rule of property law, and that case has been cited only four times since its decision in 1921, and so it can now be overruled without doing any great damage. The four times in which *Lingo* v. *Swicord* has been cited are: 182 Ark. 560, 32 S. W. 2d 315, where it was cited on a question of limitations not here involved; 183 Ark. 40, 34 S. W. 2d 1069, and 200 Ark. 832, 141 S. W. 2d 543, where it was cited on the point here involved, but where the decision in each case would have been the same regardless of the decision either way in *Lingo* v. *Swicord;* and 193 Ark. 405, 10 S. W. 2d 672, where it was cited on a point on which it was there overruled (appeal on motion to quash as an entry of appearance). Thus the case has already been overruled on one point, and to overrule it now on the point here involved is better than to let it stand.

To conclude, we now hold:

1. That the lower court properly overruled the plea of venue of the appellants, and the case should be affirmed.

2. That the maker and indorser of a note can be sued in the same action in this state under § 521 of Pope's

Digest, and the plea of venue is not good in such action unless there is a fraudulent or fictitious joinder, or unless the resident defendant is dismissed before judgment, etc., (see § 1400 of Pope's Digest).

3. That so much of *Lingo* v. *Swicord* as is in conflict with this present opinion is hereby overruled.

The judgment of the lower court is in all things affirmed.