CLARK *v.* RUTHERFORD.

5-1056                               298 S. W. 2d 327

Opinion delivered February 4, 1957.

*Rex W. Perkins* and *E. J. Ball,* for appellant.

*James R. Hale, Price Dickson* and *W. B. Putman,* for appellee.

CARLETON HARRIS, Chief Justice. In 1930, Claud Rutherford and wife, Maud Rutherford, left Nebraska and moved to the home of Maud Rutherford's parents, John and Ellen Clark, near West Fork, Arkansas. John Clark was the owner in fee simple of a 24 acre tract of land, and Ellen Clark, in her own right, was the owner of a 40 acre tract which joined it. A short time after the Rutherfords arrived, John Clark died intestate, leaving his widow, Ellen, the daughter, Maud, and two sons, Bert and D. N. Clark. According to appellees, these two sons entered into an agreement with appellee, Claud Rutherford, and his wife, whereby they agreed, that in consideration of Claud and Maud Rutherford remaining on the property and caring for their mother, (Ellen), they (the Clark brothers) would convey their interests in both

their father's and mother's estates. Bert Clark executed a written instrument, but appellees rely entirely upon an alleged oral agreement with D. N. Clark. Claud and Maud Rutherford remained in the home with Ellen Clark until February 15, 1952, when Maud died. In April, while Claud was away, visiting a sister in Oklahoma, Bert Clark obtained from his mother a warranty deed in favor of his brother, D. N. Clark, conveying the entire 40 acre tract, and also obtained a quitclaim deed in favor of D. N., conveying her interest in the 24 acre tract, which had belonged to her deceased husband. On May 10, 1952, Claud went to Oregon to visit his son, Ellis Rutherford (who later died). On the same date, D. N. Clark and wife executed a deed in favor of Bert, conveying to him an undivided one-half interest in the 40 acres, although this last deed was not placed of record until more than a year later. Ellen Clark died in February, 1953. On March 2, 1955, Bert executed a deed conveying his one-half interest in the 40 acres back to D. N., and on June 14, 1955, the two brothers filed a suit to partition the 24 acre tract alleging that they each owned an undivided one-third and that Burl Rutherford, (son of Claud and the deceased Maud Rutherford) and Lillith Rutherford, (wife and sole beneficiary of a deceased son of Claud and Maud, Ellis Rutherford) owned an undivided one-sixth each. Claud Rutherford then intervened, claiming title to both the 24 acre tract and the 40 acre tract by reason of the agreement with the two brothers to convey to him and his wife, contending that an estate by the entirety had been created, and that as the survivor, he held the property absolutely. His daughter-in-law, Lillith, answered and counterclaimed, alleging a one-half ownership in the property by reason of the same contract. At the conclusion of the trial, the Chancellor dismissed the petition of the Clark brothers, holding that the conveyances from Ellen to D. N. were invalid. The court did not find an estate by the entirety in Claud and Maud Rutherford, but vested title to the lands in defendants and intervener as follows: The 40 acre tract: Burl Rutherford, an undivided one-third interest; Lillith Rutherford, an undivided one-third interest; Claud Ruth-

erford, an undivided one-third interest. The balance of the property: Burl Rutherford, an undivided one-sixth interest; Lillith Rutherford, an undivided one-sixth interest; Claud Rutherford, an undivided two-thirds interest. There is no dispute between intervener and defendants as to the proportions they received under the decree. For reversal, appellants (Bert and D. N. Clark) argue three points, which we discuss in our own order.

I. An estate in expectancy cannot be the subject of an agreement to convey. The trial court erred in holding to the contrary.

II. **Exhibit No. 1 to** intervener's testimony should be construed as a will and not as a contract. The trial court erred in holding to the contrary.

III. The evidence is insufficient to support the finding of the trial court that D. N. Clark agreed to will or convey his expectancy in the estate of Ellen Clark to Claud and Maud Rutherford, or that he agreed to will or convey his interest in the estate of his deceased father, John Clark, to Claud and Maud Rutherford.

## I.

We do not agree with appellant's argument here, inasmuch as this particular point has been passed upon in *Bradley Lumber Co. of Ark.* v. *Burbridge,* 213 Ark. 165, 210 S. W. 2d 284. In that case, a Mrs. Wells, through a quitclaim deed, purported for a substantial consideration to convey to Burbridge her interest in the lands "present and prospective." Quoting from the language of Justice ROBINS, "As a contingent remainderman she had a 'prospective' interest in the lands when she executed this deed, and she, by the plain language of her deed, conveyed this 'prospective' interest. Therefore, when this 'prospective' interest became, upon the death of Mrs. Isabella J. Burbridge, a vested one, it passed to appellee under this deed, which, though a quitclaim deed was fully effective to transfer title." Quoting further, "Even if the deed executed by Mrs. Wells to appellee should be held ineffective as a conveyance of

title, it could well be sustained as an assignment by her to appellee of any and all interest in the land, present or future, owned by her. It has frequently been held that an assignment of a future interest, or expectancy, though unenforceable at law, is valid in equity and may be enforced in the latter forum when such expectancy ripens into a present and enjoyable estate. 'In equity, by the great weight of authority, there can be a valid assignment of . . . property to be subsequently acquired, and of contingent and expectant interests, . . . A court of equity, for example, will uphold an assignment of an interest under a will, such as of a contingent bequest and legacy, to take effect on the happening of some future event, as the coming of age of the beneficiaries or the death of some person.' 6 C. J. S., 1056. 'Courts of equity have generally upheld assignments of expectancies by prospective heirs . . .' 4 Am. Jur. 269.'' Accordingly, one can agree to convey his expectancy in an estate, and appellants' contention is not well taken.

## II.

The instrument in question is as follows:

### WEST FORK, ARKANSAS

### Dec. 18, 1930

"I, Bert Clark sound in mind on this Nineteenth (19th) day of December Nineteen Hundred and Thirty (1930) of my own free will and accord will and bequeast to my sister Maud Rutherford my One third interest in the estate of my mother Elen Clark and the Estate of my deceased father John Clark.

"It being understood by and between me and my Sister Maud Rutherford and her husband Claud Rutherford that they Maud Rutherford and her husband Claud Rutherford are to remain on the estate of my Mother Elen Clark and the estate of my deceased father John Clark care for my Mother Elen Clark the ballance of her life. It being understood and agreed that my Sister Maud Rutherford and her husband Claud Rutherford are at the death of my Mother Elen Clark to have and to hold

my one-third interest in the estate of my Mother Elen Clark and the estate of my deceased Father John Clark. But this part of my estate only. This will to in know way connected or effect or have bearing on will made to my wife Clara Josephine Clark of my property and estate owned and accumulated by me and located in the State of Oklahoma. I will only to my Sister Maud Rutherford my part of the estate of my Mother Elen Clark and my deceased Father John Clark said estate located in the County of Washington and State of Arkansas.

"It is agreed by me and between my Sister Maud Rutherford and her husband Claud Rutherford if My Mother is living at the end of four years after date of this will that my Sister Maud Rutherford and her Husband Claud Rutherford are to have and to hold my part of the estate of my Mother Elen Clark and the estate of my deceased Father John Clark.

/s/ Signed

Bert Clark.

Witness
/s/ W. E. Phillips
/s/ Clifton Karnes
/s/ Roy A. Karnes

"It is agreed and understood that I reserve my one-third interest in all mineral rights produced from the estate of my Mother Elen Clark and my deceased Father John Clark."

---

This instrument was not prepared by an attorney, but by Bert Clark himself, and the question posed is whether it constitutes a will or a contract. While it is couched in terms of a will, it obviously is not meant as such. In determining whether or not an instrument is a will, it is necessary to ascertain whether there is testamentary intent; that is, is the estate in the beneficiary to be created upon the death of the maker of the instrument? Clearly such is not the intention here. The disposition of the interest of Bert Clark depended, not upon

his death, but upon the death of his mother. In conflict with this provision is the third paragraph, which provides that Maud and Claud Rutherford are to have and hold the interest of the maker (Bert Clark) if the mother (Ellen Clark) is living at the end of four years. In either event, the instrument cannot be considered as a will because nothing is dependent upon the death of Bert Clark. There is a further notation which provides that the maker reserves his one-third interest in the minerals. A reservation in an instrument can only be effected by conveyance or contract, and not by will. We hold the instrument to be a valid assignment of the interest of Bert Clark in his father's estate, and an assignment of his expectancy in his mother's estate.

## III.

Appellees rely entirely upon an alleged oral agreement with appellant D. N. Clark. Appellee, Claud Rutherford, testified that D. N. Clark made the same agreement orally that Bert Clark had made in writing, but this is vigorously denied by appellant. It is undisputed that to establish an oral contract to convey land, the evidence must be clear, cogent and convincing. *McCombs* v. *McCombs,* 227 Ark. 1, 295 S. W. 2d 774; *McKie* v. *McClanahan,* 190 Ark. 41, 76 S. W. 2d 971. One of the appellants' witnesses, a Mrs. Karnes, testified that D. N. Clark told her that he had made an agreement with the Rutherfords, but her testimony does not make clear as to what such agreement consisted of. A witness, Mrs. Hattie Watson, testified that she heard some conversation between Rutherford and D. N. Clark on the night before Rutherford left for Oregon and stated that "she understood" Clark to ask Rutherford the question "What do you want done with your place?" This about summarizes the evidence for appellees. In contrast, from the inception of such alleged agreement, D. N. Clark refused to sign any deed or contract. A few days after the alleged oral understanding had been reached, the parties met in a law office in Fayetteville, and D. N. Clark there refused to sign any kind of instrument conveying his interest. Rutherford testified that he or his wife asked

this appellant many times during the 21 years appellee and wife lived on the Clark place, to execute a deed or contract, but that Clark consistently refused. Nor did Rutherford apparently rely upon appellant making any conveyance. Numerous times during the trial, Rutherford stated that he never did think D. N. Clark would convey his interest. He stated he considered D. N. Clark a crook, that from the time they were in the lawyer's office he knew that Clark had no intention of making such a conveyance, that he would not believe anything D. N. Clark said, (in his words) ''I couldn't believe him any further than you could throw a bull by the tail.'' Accordingly, it certainly does not appear that Claud Rutherford stayed on the place for 21 years in reliance upon a belief that D. N. Clark would convey his interest in the property. Clark's contention is that Rutherford and his wife (Clark's sister) were taken care of during the 21 year period in return for the services rendered to the mother, and that the intention of each of the appellants had only been to furnish their sister a home during her lifetime. The evidence does show that both the Clark boys gave some sums of money throughout the years for the support of their mother, paid the taxes on the properties for the entire period of time, and paid the insurance premiums for said period of time. Another circumstance deemed unfavorable to the cause of appellee, is that Rutherford left the home place on May 10, 1952, and went to Oregon. He returned about a year and a half or two years later for the purpose of disposing of some personal property, and then went back to Oregon. He does not appear to have exercised any acts of ownership during this period of time, having paid no taxes, nor borne any expenses relative to the maintenance of the properties. He furthermore testified that he learned on this return visit that D. N. Clark had received a deed from Ellen Clark, but that despite such knowledge, he made no effort to contact Clark, stating ''There wasn't no use.'' Certainly it seems the normal reaction of one claiming property would be to contact the party alleged to have taken it from him, and then, failing to reach a satisfactory understanding, institute

suit to enforce his rights. Rutherford returned to Oregon without taking any action whatsoever. His explanation was that he relied on the written contract with Bert as herein set out. D. N. did not join in the execution of that instrument, and is not bound thereby. Under the rule, heretofore mentioned, and repeatedly reiterated, ". . . we have many times held that a court of equity may grant specific performance of a parol contract to convey land only where the evidence of the agreement is clear, satisfactory and convincing." *McCombs v. McCombs, supra.* We are of the opinion that appellees' proof falls short of establishing their cause.

While we cannot say that the Chancellor erred in setting aside the deeds executed by Ellen Clark to her son, D. N.,[1] said appellant would still be entitled to his rights of inheritance in both his father's and mother's estates.

The decree of the court will therefore be reversed insofar as said decree divests D. N. Clark of his one-third interest in the properties under discussion. The cause is remanded with directions to the Chancellor to enter a decree not inconsistent with this opinion.

---

[1] While the Chancellor did not state his reason for setting aside such conveyances, allegations on part of the intervener, Claud Rutherford, were as follows: (1) They were not executed in the form or manner required by law; (2) at the time of their purported execution and delivery the said Ellen Clark was not mentally competent to execute them; (3) they were procured and obtained by and through fraud perpetrated by and on the part of the plaintiffs; (4) they were procured and obtained by and through undue influence brought to bear, exercised and perpetrated by the plaintiffs upon the said Ellen Clark; and (5) they were never delivered by the said Ellen Clark. * * *