Sharon Kay EDMUNDSON *v.*
The ESTATE OF Oral W. FOUNTAIN, Deceased

03-1459                                                      189 S.W.3d 427

Supreme Court of Arkansas
Opinion delivered July 1, 2004

*Leroy Blankenship*, for appellant.

*Tom Thompson; Bill Walmsley;* and *Jerrie Grady*, for appellee.

Donald L. Corbin, Justice. Appellant Sharon Kay Edmundson appeals the order of the Izard County Circuit Court denying her petition to probate a purported holographic will written by her mother Oral W. Fountain. On appeal, she argues that the issue of whether the will contains words of testamentary intent is only one factor to be reviewed in determining if the will is valid. This case is before us on a petition for review from an unpublished court of appeals' opinion in *Edmondston [Edmundson] v. Estate of Oral W. Fountain*, No. CA02-842 (Ark. App. Dec. 10, 2003)[1]; hence, our jurisdiction is pursuant to Ark. Sup. Ct. R. 1-2(e). We affirm.

The present dispute centers on a hand-written instrument purported to be the last will and testament of Fountain. The instrument, titled "Last Will" and dated January 1, 1997, lists all five of Fountain's children with certain items listed under their names. According to this document, the majority of Fountain's estate, consisting of a 160-acre farm, its contents, thirty-seven head of cattle, and a 1972 truck, was left to Appellant. Appellant was Fountain's youngest child, who lived next door to her mother and helped her mother after the other children moved away. The document was signed by Fountain and witnessed by two acquaintances.

Fountain died on April 23, 1998. Initially, her estate was probated as intestate and Appellant objected to a petition filed by her siblings requesting that Fountain's personal property be sold, because she claimed that it belonged to her. Despite her objection, the trial court ordered the property to be sold. However, in June 1999, Appellant petitioned the court to admit a holographic instrument that had been discovered. Roger Hall had purchased a roll of upholstery from Appellant's husband and discovered an envelope containing the document signed by Fountain and titled "Last Will." He then gave the document to Appellant. Appellant's four siblings objected to the admission of the instrument, claiming that the document was not in the handwriting of their mother.

A trial was held on the admission of the purported will. During the trial, numerous witnesses testified, including family members, the attesting witnesses, and handwriting experts. Verlin

---

[1] There is some apparent confusion over the correct spelling of Appellant's last name. In its opinion, the court of appeals refers to Edmondston. In documents in the Transcript, Appellant signed her name Edmonston. We, however, adopt the spelling utilized by the Clerk of this court, which is Edmundson.

Harris, Fountain's sister, testified that prior to Fountain's death, she told her sister that she had a will. The deposition testimony of Ricky Smithson and Justin McAlister, the two individuals who witnessed the will, was admitted during the trial. They each testified that they were at Fountain's house one day looking for an acquaintance. While there, Fountain asked the two men for a favor. She then produced a document they believed to be her will, which they signed.[2]

At the conclusion of the trial, the trial court ruled that the instrument was in Fountain's handwriting. The court refused, however, to admit the instrument to probate as Fountain's will, finding that it lacked the requisite testamentary intent. Specifically, the trial court found that there was "no testamentary language whatsoever within the instrument." According to the trial court, this lack of dispositive wording rendered the instrument invalid on its face.

Appellant appealed the order of the trial court to the court of appeals. The court of appeals found that the trial court erred in denying Appellant's request to probate the instrument. The court of appeals recognized the long-standing case law of this court that testamentary intent is necessary to the validity of a holographic will, but then distinguished our cases analyzing testamentary intent. The court of appeals determined that the deciding issue in this case was whether words of a testamentary nature are absolutely required by our case law. The court then concluded that they are not, agreeing with Appellant that the use of certain dispositive words should not be placed above the clear intent of the decedent. The court then went on to find that the clear intent of Fountain was for this document to be her last will, as evidenced by certain facts, including that it was titled "Last Will," was signed, was witnessed by two people, and listed all of her children, with certain property listed under each child's name.

Following the decision by the court of appeals, the Estate petitioned this court for review, arguing that there is a perceived inconsistency in the court of appeals' decision and this court's decisions in prior cases. Specifically, the Estate argued that according to this court's previous case law, where there are no words of

---

[2] Smithson could not recall if Fountain signed the document in his and McAlister's presence. McAlister, on the other hand, testified that the document was already written out before they signed it.

a dispositive nature, the will is defective on its face. This court granted review on January 29, 2004.

When this court grants a petition to review a decision by the court of appeals, this court reviews the appeal as if it had been originally filed in this court. *Lewellyn v. Lewellyn,* 351 Ark. 346, 93 S.W.3d 681 (2002). Moreover, we review probate proceedings *de novo,* and we will not reverse the decision of the circuit court unless it is clearly erroneous. *Dillard v. Nix,* 345 Ark. 215, 45 S.W.3d 359 (2001); *Amant v. Callahan,* 341 Ark. 857, 20 S.W.3d 896 (2000).

Appellant's sole point on appeal is that the trial court erred in refusing to admit the purported will to probate, as the evidence demonstrated that Fountain intended for the document to be her will. According to Appellant, the issue of whether there were dispositive words is only one factor to be considered in determining testamentary intent. The Estate argues that this court's case law requires the document to contain words that express testamentary intent. The Estate is correct.

The law surrounding testamentary intent is well settled. A will is a disposition of property to take effect upon the death of the maker of the instrument. *See Faith v. Singleton,* 286 Ark. 403, 692 S.W.2d 239 (1985); *Clark v. Rutherford,* 227 Ark. 270, 298 S.W.2d 327 (1957). To be valid as a will, an instrument must be executed with testamentary intent, or *animus testandi,* which is the intention to dispose of one's property upon one's death. *Smith v. Nelson,* 227 Ark. 512, 299 S.W.2d 645 (1957). This court determines that intent by looking to the four corners of the instrument. *McDonald v. Petty,* 262 Ark. 517, 559 S.W.2d 1 (1977). It is a question of law for the court to determine from the face of the instrument whether the writer intended to make a testamentary disposition. *Id.; Stark v. Stark,* 201 Ark. 133, 143 S.W.2d 875 (1940).

In *McDonald,* 262 Ark. 517, 559 S.W.2d 1, this court was faced with the issue of whether a holographic will contained the requisite testamentary intent. The court stated that there can be no will unless "there exists in the mind of the writer that it was his intent to make a testamentary disposition of his property and *that intent must be expressed so that there can be no mistake as to what was intended.*" *Id.* at 519, 559 S.W.2d at 2 (emphasis added). In *McDonald,* this court concluded that since the document set forth

no words of a dispositive nature, it was defective on its face because it lacked the required *animus testandi* or intent to make a will. Thus, the probate court's allowance of extrinsic evidence was in error as it was not admissible to prove the necessary intent. In concluding as it did, this court explained:

> Here the instrument is merely a sketch or drawing on the back of a used envelope with names in individual squares, directions indicated, and the decedent's signature and date. There is absolutely nothing indicating an intent that this instrument should serve as a testamentary disposition of his property. No case is cited to us nor has our research revealed one that would uphold this instrument or a similar one as facially sufficient to permit extrinsic evidence to establish it was intended as a will. Certainly, it cannot be said that its expressions are so clearly stated that, without inference, no mistake can be made as to the existence of a testamentary intention.

*Id.* at 519-20, 559 S.W.2d at 2.

In *Dunn v. Means*, 304 Ark. 473, 803 S.W.2d 542 (1991), the appellant sought to probate her mother's holographic will as the will of Claude Rogers, an unmarried man who had lived with appellant's mother. The will had the following notation appended beneath her mother's signature: "Judee Dunn — Claude & I give you full power to do & take care of all our Business & do as you wish with, with it, with no problems from anyone. You can sell or dispose of all property & monies." *Id.* at 474, 803 S.W.2d at 542. Appellant's mother, Mr. Rogers, and two witnesses signed this notation. This court affirmed the denial of probate, stating:

> Further, where a document sets forth no words of a dispositive nature, it is defective on its face because it lacks the required intent to make a will, and extrinsic evidence is not admissible to prove the necessary intent.
>
> In this case, we find no testamentary intent whatsoever within the passage that Ms. Dunn claims to be the will of Mr. Rogers. Certainly, it cannot be said that this instrument's expressions are so clearly stated that, without inference, no mistake can be made as to the existence of testamentary intention.

*Id.* at 475-76, 803 S.W.2d at 543.

In the instant case, we note that the court of appeals in reversing the trial court relied, in part, on this court's decision in *Chambers v. Younes*, 240 Ark. 428, 399 S.W.2d 655 (1966). Spe-

cifically, the court of appeals quoted with approval our statement in *Chambers* that for a document to be a valid will, it need not have a specific title or be couched in technically appropriate language, as long as it discloses the intention of the maker regarding the disposition of property. In *Chambers*, this court approved the testator writing, "I Boyd Ruff request that all I own in the way of personal or real estate property to be my wife Modene." *Id.* at 429, 399 S.W.2d at 656. In finding that this language was sufficient proof of testamentary intent, this court quoted from 94 C.J.S. *Wills* § 203 and stated that no *particular* words are necessary to manifest testamentary intent. In other words, this court recognized that while it is not necessary for a testator to use specific terms such as "bequeath" or "devise," there must be *some* words indicating an intent on the part of the testator to dispose of property.

◼ Moreover, this court has explained that while we recognized in *Chambers* that inquiry may be made into all relevant circumstances where the existence of testamentary intent is in doubt, such a rule only applies where some testamentary intent can be inferred from the four corners of the document itself. *See e.g.*, *Faith*, 286 Ark. 403, 692 S.W.2d 239; *McDonald*, 262 Ark. 517, 559 S.W.2d 1. It is axiomatic that use of extrinsic evidence is appropriate only when the instrument contains some words expressing an intent to dispose of property; stated another way, it is inappropriate when the instrument expresses no such words of disposition. *See David Terrell Faith Prophet Ministries v. Estate of Varnum*, 284 Ark. 108, 681 S.W.2d 310 (1984); *McDonald*, 262 Ark. 517, 559 S.W.2d 1. That is so because the existence of testamentary intent is not a matter of inference; rather, it must be expressed so that no mistake is made as to the existence of that intention. *Id.* Although the general rule is that a will should be, if possible, construed so as to avoid intestacy, this court will not speculate on a testator's intent. *Id.*

◼ The dissenters rely in part on *Estate of O'Donnell*, 304 Ark. 460, 803 S.W.2d 530 (1991), to support its contention that extrinsic evidence should be allowed in order to determine testamentary intent. In *O'Donnell*, this court affirmed the trial court's denial of a motion to admit a holographic instrument to probate. In reaching this conclusion, this court stated that the trial court's reasoning was within the applicable framework of the law. It is apparent in *O'Donnell* that the trial court relied on extrinsic

evidence in concluding that the instrument lacked testamentary intent. What is not apparent, however, is whether the trial court first determined that some words of testamentary intent to dispose of property could be inferred from the four corners of the proffered instrument. The *O'Donnell* court cited to this court's previous opinion in *Varnum*, 284 Ark. 108, 681 S.W.2d 310, for the proposition that the document itself, along with all the attending circumstances, must overcome all doubts about testamentary intent. In *Varnum*, however, this court went on to state that extrinsic evidence may only be considered when the instrument uses words expressing testamentary intent. Although the *O'Donnell* court cited the *Varnum* and *McDonald* cases, the court failed to mention the established rules that, when a document sets forth no words of a dispositive nature, it is defective on its face because it lacks the required intent to make a will, and extrinsic evidence is not admissible to prove the necessary intent. *See also Dunn*, 304 Ark. 473, 803 S.W.2d 542 (where the court further said that it is a question of law for the court to determine from the face of the instrument whether the writer intends to make a testamentary disposition).[3] Thus, to the extent that *O'Donnell* conflicts with this ruling, it is hereby overruled.

■ Turning back to the case now before us, Appellant is asking this court to speculate on the intent of Fountain when she drafted the document titled "Last Will." That document contains absolutely no words of testamentary intent. The dissent makes much ado about the fact that the document was titled "Last Will." The title alone, however, does not cure the defective nature of this document. The lack of any language indicating that Fountain intended to give or leave certain property to each of her children rendered the document facially invalid. Our cases make it clear that where testamentary intent cannot be ascertained from the face of the document, extrinsic evidence may not be admitted. Thus, in

---

[3] The dissenters also rely on the RESTATEMENT (THIRD) OF PROPERTY: WILLS & DONATIVE TRANSFERS § 3.2, cmt. c (1999) for the proposition that "[t]estamentary intent need not be shown from the face of the will, but can be established by extrinsic evidence." The Restatement is obviously completely in conflict with this court's holdings as set out in this opinion. In addition, the Restatement was neither argued to nor ruled on by the court below, nor did either party even argue or mention the Restatement in this appeal. Instead, the idea to apply or adopt the Restatement comes from the fertile minds of the dissenters, not the parties.

this case, the only evidence properly considered in order to determine Fountain's intent is the holographic document itself. The trial court correctly determined that document was facially invalid, as it lacked any dispositive language and was nothing more than a list of Fountain's children with certain property under each name. In sum, we agree with the trial court that the document's expressions are not so clearly stated that, without inference, no mistake can be made that Fountain possessed the requisite testamentary intent when she drafted this document. Accordingly, we cannot say that the trial court clearly erred in refusing to probate the holographic document proffered by Appellant.

Circuit court affirmed; court of appeals reversed.

DICKEY, C.J., and BROWN, J., dissent.

BETTY C. DICKEY, Chief Justice, dissenting. I disagree with the majority's contention that Ms. Fountain's "Last Will" contained "absolutely no words of testamentary intent." The majority states that, without testamentary intent ascertainable from the face of the document, extrinsic evidence may not be admitted. In fact, the case law cited by the majority leads one to believe that the document in question contains testamentary language sufficient to allow the trial court to consider extrinsic evidence in order to determine whether testamentary intent can be ascertained. For these reasons, I would reverse and remand in order to allow the trial court to consider extrinsic evidence.

The majority cites to *David Terrell Faith Prophet Mininistries v. Estate of Varnum*, 284 Ark. 108, 681 S.W.2d 310 (1984), for the proposition that the existence of testamentary intent is not a matter of inference; rather, it must be expressed so that no mistake is made as to the existence of that intention. The majority is correct as far as it goes. However, a more complete citation to this case is as follows:

> Will contest cases come before this court for a trial *de novo* but we will affirm the order of the probate judge unless it is clearly against the preponderance of the evidence. *Greenwood, Guardian v. Wilson, Adm'x*, 267 Ark. 68, 588 S.W.2d 701 (1979). The existence of testamentary intent is not a matter of inference, but must be expressed so that no mistake be made as to the existence of that intention. *McDonald, Ex'x v. Petty*, 262 Ark. 517, 519, 559 S.W.2d 1, 2 (1977). *Inquiry may be made into all relevant circumstances where the*

*existence of testamentary intent is in doubt. Chambers v.Younes, Adm'r,* 240 Ark. 428, 399 S.W.2d 655 (1966), citing 94 C.J. S. *Wills,* § 203. However, *use of extrinsic evidence is appropriate only when the instrument expresses an intent, it is inappropriate when the instrument expresses no intent,* as in *McDonald, Ex'x, supra.*

*David Terrell Faith Prophet Ministries v. Estate of Varnum,* 284 Ark. at 112, 681 S.W.2d at 312 (emphasis added).

In *Varnum,* the trial court considered, not only the purported will itself, but also several other documents that were purported wills written by the decedent. All were written in the decedent's handwriting and each had a different principle beneficiary. *Id.* The document at issue in *Varnum,* called the "Terrell" will, might have appeared on its face to be a holographic will; but, taken together with the other documents, it was apparent that the "Terrell" will was merely a draft and not Ms. Varnum's final will. *Id.*

In another case cited, and summarily overruled, by the majority, *In the Matter of the Estate of O'Donnell,* 304 Ark. 460, 803 S.W.2d 530 (1991), the holographic instrument at issue was very much like the document in the instant case. As recently as February of this year, this court reaffirmed the long standing legal principle that there is a strong presumption of the validity of prior decisions. *Union Pacific Railroad Co. v. Barber,* No. 03-57, slip op. (February 26, 2004). Although we do have the power to overrule previous decisions, it is necessary as a matter of public policy to uphold prior decisions unless great injury or injustice would result. *Id.* The policy behind *stare decisis* is to lend predictability and stability to the law. *Id.* In matters of practice, adherence by a court to its own decisions is necessary and proper for the regularity and uniformity of practice, and that litigants may know with certainty the rules by which they must be governed in the conducting of their cases. *Id.* Precedent governs until it gives a result so patently wrong, so manifestly unjust, that a break becomes unavoidable. *Id.* Our test is whether adherence to the rule would result in "great injury or injustice." *Scamardo v. Jaggers,* No. 03-765 slip op. (February 26, 2004).

This court has long recognized that a rule of property is rarely, if ever, overturned, so that the bar can rely on the rule in drafting long term instruments and advising clients. *Abrego v. United Peoples Federal Savings and Loan Association,* 281 Ark. 308, 664 S.W.2d 858 (1984) (citing *Gibson v. Talley,* 206 Ark. 1, 174 S.W.2d 551 (1943). In *Gibson,* we defined a rule of property as, "A settled

legal principal governing the ownership and devolution of property; the decisions of the highest court of a state when they relate to and settle some principle of local law directly applicable to title. In the plural, those rules governing the descent, transfer, or sale of property, and the rules which affect the title and possession thereto." *Id.* at 7. Surely, rules governing the probate of holographic wills qualify as those governing the decent of property. Consequently, both the bar and the general public rely upon our established precedent in advising clients in the drafting of long term instruments like holographic wills. There is no reason for this court to depart from our well reasoned holding in *Estate O'Donnell,* 304 Ark. 460, 803 S.W.2d 530 (1991).

The O'Donnell instrument was dated, signed, had the phrase, "Last Will & Test" written in the decedent's handwriting, and included names of beneficiaries with amounts or specific items of property written beside the names. In some cases, amounts had been crossed out and new amounts written beside them. In the instant case, Ms. Fountain's will is dated, signed, has the phrase, "Last Will" at the top of the document, lists her children's names, and underneath each name are listed specific dollar amounts or property. There are no cross-outs on Ms. Fountain's will, and she has two witnesses who signed the document.

In *O'Donnell,* the trial court quoted the *Varnum* case, among others, noting that "[t]he document itself, *along with all the attending circumstances,* must overcome all doubt about testamentary intent." The trial court then considered extrinsic evidence, including the testimony of several witnesses. The court itemized this extrinsic evidence, along with the document itself, into "Factors Favoring Holographic Instrument as Will" and "Factors Indicating Holographic Instrument Not a Will." The court finally determined the instrument was not a will, and refused to admit it to probate. In affirming the trial court, we said,

> We agree with the reasoning of the probate judge who had the facts before him. His reasoning is within the framework of the applicable law which is cited in the memorandum opinion. We cannot say the probate judge was clearly erroneous in denying the holographic instrument's admission to probate for *lack of testamentary intent.*

*O'Donnell,* 304 Ark. at 465, 803 S.W.2d at 532 (emphasis added).

It seems that if it was not error for the trial court in *O'Donnell* to utilize extrinsic evidence in its reasoning, then the trial court in this case at least had the option of being able to do the same, considering the holographic instrument in both cases are virtually identical. Indeed, Ms. Fountain's instrument was witnessed and had no cross-outs or changes — both factors to show that this case is, perhaps, even stronger than that in *O'Donnell*.

The trial court in the instant case cited *Dunn v. Means*, 304 Ark. 473, 803 S.W.2d 542 (1991), for the proposition that, where a document sets forth no words of a dispositive nature, it is defective on its face because it lacks *the required intent* to make a will and *extrinsic evidence is not admissible* to prove the necessary intent. The trial court further noted the similarities with *O'Donnell*; and yet the trial court's order, in paragraph seven, includes the statement, "In O'Donnell, as in the present case, there is *no language of any dispositive or testamentary character.*" Thus, the trial court stated it had to determine from the face of the document whether the language was testamentary.

Clearly, the *O'Donnell* instrument must have contained enough testamentary language for the trial court to admit extrinsic evidence, because we affirmed the trial court's decision *and* its reasoning in *O'Donnell*. If that instrument, which is remarkably similar to Ms. Fountain's, contained the necessary language, I am unable to discern why the trial court, or the majority, determined that Ms. Fountain's instrument does not contain sufficient testamentary or dispositive language to allow the admission of extrinsic evidence. While it is true that Ms. Fountain did not use specific words such as "I give" or "I bequeath" when she listed her property, that fact is also true of the instrument in *O'Donnell*.

The comments to the Restatement (Third) of Property: Wills & Donative Transfers (1999) support the use of extrinsic evidence to show testamentary intent when presenting a holographic will for probate. *See* RESTATEMENT (THIRD) OF PROPERTY (WILLS & DON. TRANS.) § 3.2 cmt. c (1999). ("[t]estamentary intent need not be shown from the face of the will, but can be established by extrinsic evidence"). Illustration 7 of the Restatement's comment c provides the following example:

> 7. *Extrinsic evidence of testamentary intent.* After G's death, a document was found in her desk. The document, written in G's handwriting, appears as follows:

---

To A, 1/4
To B, 1/4
To C, 1/4
To D, 1/8
To E, 1/8

/s/G

3/12/98

---

Two of G's friends testified that G told them that she made a will, and that it could be found in her desk after her death. The testimony of G's friends may be considered in determining whether G's document was executed with testamentary intent. As in Illustration 6, the fact that the transfers add up to all of G's estate raises an inference of testamentary intent.

RESTATEMENT (THIRD) OF PROPERTY (WILLS & DON. TRANS.) § 3.2 cmt. c, illus.7 (1999).

Here, as in the Restatement's illustration, Ms. Fountain accounted for all of her children as well as her entire estate, thus raising an inference of testamentary intent. In a seminal decision on the issue, we held that extrinsic evidence was admissible to establish testamentary intent of a purported holographic will:

> Review of our cases clearly indicates that our courts have customarily admitted extrinsic testimony to establish testamentary intent, without considering whether the statute on proof of a holographic will (62-2117, *supra*) expressly permits such testimony. [From a] [p]erusal of *Arendt v. Arendt*, 80 Ark. 204, 96 S.W. 982, and *Weems v. Smith*, 218 Ark. 554, 237 S.W.2d 880, and the letters therein held to be valid holographic wills, it is apparent that extrinsic testimony was necessary to fortify the finding of existence of testamentary intent. We think this is proper.

*Chambers v. Younes*, 240 Ark. 428, 399 S.W.2d 655 (1966).

The cases cited by the majority in support of their contention, *McDonald v. Petty*, 262 Ark. 517, 559 S.W.2d 1 (1977), and *Dunn v. Means*, 304 Ark. 473, 803 S.W.2d 542 (1991), are inapposite to the instant case. In *McDonald*, the document in question was nothing more than a sketch on the back of a used envelope with names in individual squares, and this court correctly

held that there was absolutely nothing indicating an intent that this instrument served as a testamentary disposition. In the instant case, Ms. Fountain listed her children, and then listed various property or amounts of money after each child's name.

In *Dunn v. Means, supra,* the document was not even in the decedent's handwriting, thus violating a basic requirement of any valid holographic will in this state. *See* Ark. Code Ann. § 28-25-104 (Repl. 2004). Here, the document, with the exception of the witnesses, was found to be completely in Ms. Fountain's handwriting. In *Dunn v. Means,* we stated that a document setting forth no words of a dispositive nature is defective on its face as a will. However, the word "dispositive" is defined by *Black's* as "being a deciding factor; (of a fact or factor) bringing about a final determination." *Black's Law Dictionary* 484 (7th ed. 1999). The title "Last Will" at the top of Ms. Fountain's holographic instrument, along with the way she has arranged the document listing all her children and all her property, and her signature at the bottom, are sufficient to show "words of a dispositive nature" enough so that extrinsic evidence should have been considered to determine whether this document is a valid holographic will.

Because I believe the caption "Last Will" meets the requirement of dispositive or testamentary language on the facts of this case, I disagree with the majority's affirmance of the trial court. This case should be remanded for consideration of extrinsic evidence.

I respectfully dissent.

BROWN, J., joins in this dissent.

ROBERT L. BROWN, Justice, dissenting. I join the dissent of Chief Justice Dickey. The concept behind a holographic will is to authorize a testator to bequeath and devise property in that person's handwriting without the statutory formalities of a formal will. Here, Mrs. Fountain left the following instrument:

Last Will       Jan. 1 1997

Kay Edmonston
160 acre farm & contents rema[in]ing
37 head of cattle at this time
1972 truck

Wayne Fountain
cattle on Wayne's Farm
+ Fiddle
Shirley Washington
200.00
E.W. Fountain
200.00
Nell Harris
200.00

Oral W. Fountain

Witness.
Ricky Smithson
Justin McAlister

To conclude, as the majority does, that evidence of testamentary intent is not raised by this writing dismisses the obvious. Mrs. Fountain titled the instrument "Last Will," listed the heirs in conjunction with specific property, signed it at the end, dated it, and had it witnessed. The majority, however, holds that some dispositive language is essential for a valid holographic will. This court has made it clear in the past that technical testamentary language is not necessary. *See, e.g., Cartwright v. Cartwright*, 158 Ark. 278, 250 S.W. 11, 13 (1923) ("If the offered instrument is testamentary in effect, its particular form is unimportant. . . .") *Murphy v. Murphy*, 144 Ark. 429, 222 S.W. 721 (1920) citing *Arendt v. Arendt*, 80 Ark. 204, 96 S.W. 982 (1906)). The principle that magic words are not necessary to prove testamentary intent is so ingrained in the country's jurisprudence that it has found its way into our legal encyclopedias. *See, e.g., Wills, C.J.S.*, § 200 p. 264 ("However, no particular words are required to create a will, and legal language or technical words are not necessary in making a testamentary disposition of property.").

At this stage, we are talking about whether doubt is raised of testamentary intent from the four corners of the document so as to allow extrinsic testimony to be introduced by other witnesses to ascertain what the testator intended. We are not talking about whether the language in the Fountain will absolutely establishes testamentary intent. The majority, however, superimposes strict requirements on a holographic will and disallows extrinsic testimony of intent, which, I maintain, was never the philosophy behind the holographic procedure. Rather, the holographic will was developed to allow a testator to distribute property at his or

her death by means of a handwritten document and avoid intestacy. Perhaps that testator had no access to a lawyer for purposes of a formal will or chose not to take advantage of legal services.

This court has looked to extrinsic evidence in the past to determine testamentary intent when an inference of that intent was raised by the handwritten document. We have said:

> "[O]ur courts have customarily admitted extrinsic testimony to establish testamentary intent, without considering whether the statute on proof of a holographic will expressly permits such testimony." . . . "[I]nquiry may be made into all relevant circumstances where the existence of testamentary intent is in doubt[.]"

*Chambers v. Younes*, 240 Ark. 428, 399 S.W.2d 655 (1966). *See also Cartwright v. Cartwright*, 158 Ark. 278, 250 S.W. 11 (1923); *Wills — Proof of Testamentary Intent in Holographic Wills*, 25 Ark. L. Rev. 376 (1971). The Restatement (Third) of Property: Wills & Other Donative Transfers § 3.2 (1999) clearly endorses this philosophy for the introduction of extrinsic evidence, as Chief Justice Dickey's dissent describes in detail.

It may be the majority fears that allowing extrinsic evidence opens the door to multiple family squabbles in court over testamentary intent when a handwritten instrument is found after a person's death. I do not share that concern. It is the decedent's intent as to how his or her property will be distributed at time of death that is all-important. I am, unwilling to concede that in ascertaining this intent, our court system will be unduly burdened by efforts to discern what a testator meant by a handwritten instrument, under such facts as we have before us. The result of today's discussion is to go back in time and limit the ability of people to write a handwritten will so as to avoid intestacy.

For these reasons, I respectfully dissent.

DICKEY, C.J., joins.